## Richmond

### JOHN PAUL STEVENSON V. COMMONWEALTH OF VIRGINIA

October 7, 1977.

Record No. 761500.

Present: All the Justices.

*C. Willard Norwood* (*Norwood & Norwood*, on brief), for plaintiff in error.

*Alan Katz, Assistant Attorney General* (*Anthony F. Troy, Attorney General*, on brief), for defendant in error.

I'ANSON, C.J., delivered the opinion of the Court.

On July 16, 1976, a jury found the defendant, John Paul Stevenson, guilty of murder of the second degree and fixed his punishment at confinement in the state penitentiary for a period of 10 years. He was sentenced accordingly.

We granted defendant a writ of error limited to the question whether the trial court erred in admitting into evidence a bloodstained shirt allegedly worn by the defendant on the day of the homicide and in allowing testimony concerning scientific tests run on the shirt.

The evidence, briefly stated, shows that at approximately six o'clock in the afternoon of December 2, 1975, the partially clothed body of Lillian M. Keller was found on the bed in her apartment at the Holly Court Motel in Ashland. Her death resulted from multiple stab wounds. Mrs. Keller was manager of the motel, and she occupied an apartment adjoining the front office. Her apartment also adjoined another unit which was the residence of Howard Franklin Bittorf. There was a connecting door between the Keller apartment and the living quarters of Bittorf.

In the early morning hours of December 2, 1975, the defendant, who is Bittorf's brother-in-law and a resident of Baltimore, Maryland, entered Bittorf's apartment through an unlocked door and spent the rest of the night there. That day Stevenson, Bittorf, and Jeffrey A. Taylor, an occupant of another unit in the motel, spent the morning and early afternoon drinking and "riding around" in defendant's automobile.

Taylor testified that when they returned to Bittorf's apartment in the early afternoon, Mrs. Keller was engaged in cleaning the apartment. He left shortly thereafter and went to his room to rest. He said that he did not see the defendant and Bittorf anymore that day, but when he last saw the defendant he was wearing a long-sleeve buttoned shirt with the sleeves rolled up.

There was evidence that defendant and Bittorf left the motel parking lot in defendant's car some time between 4:00 and 4:30 p.m. on the day the victim was found dead.

The police officers who searched the Keller and Bittorf apartments found the defendant's wallet on the floor near the bed in which the victim's body was lying. The wallet contained a Maryland operator's license issued to Stevenson. In Bittorf's apartment, the police found a bloodstained knife and towel. No identifiable fingerprints were found on the knife, and none were detected anywhere else by the police.

On December 5, 1975, police officer Schultze went to the address in Baltimore which was shown on Stevenson's operator's license. There he met two women who identified themselves as the wives of Bittorf and Stevenson. After identifying himself, he told the ladies the purpose of his visit. He asked them if John Stevenson had changed clothes when he arrived home on either the night of the second or the early morning of the third of December. As a result of the answer given by Mrs. Stevenson, Schultze requested her to give him the clothes worn by Stevenson when he returned home from Ashland. Mrs. Stevenson then took Officer Schultze to another Baltimore address and presented him with a knit-type pullover shirt. On December 8, 1975, Schultze took the shirt to the Consolidated Laboratory in Richmond and turned it over to Mary Jane Burton. Over the objection of the defendant, the shirt was admitted into evidence.

Mary Jane Burton testified that she examined the shirt and found a small stain which she chemically identified as human blood. She was able to determine the type of blood in the ABO and EPA systems, but the sample was too small to type it in the Rh system. She said the blood on the shirt was the same type as the blood of the victim in the two systems she was able to type. She further said that 4.7 percent of the population have the same blood type as the victim.

Defendant argues that the trial court erred in admitting the shirt into evidence on the ground that the nonverbal conduct of Mrs. Stevenson was equivalent to a verbal assertion of the truth of the matter asserted and was thus inadmissible under the rule against hearsay.

Hearsay is defined by McCormick on Evidence § 246 at 584 (2d ed. 1972) as follows:

"Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter."

This definition is consistent with those stated in *Williams* v. *Morris*, 200 Va. 413, 416-17, 105 S.E.2d 829, 832 (1958).

Rule 801 of the Uniform Rules of Evidence (U.L.A.), in pertinent part, states:

"(a) Statement. — A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.
* * *

"(c) Hearsay. — 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

*See* Federal Rules of Evidence § 801 (a) and (c), 28 U.S.C.A.; Saltzburg and Redden, Federal Rules of Evidence Manual 454-55, 475-76 (2d ed. 1977). The Uniform Rules are identical to those in the Federal Rules.

■ Nonverbal conduct of a person intended by him as an assertion and offered in evidence to prove the truth of the matter asserted falls within the ban on hearsay evidence. McCormick on Evidence § 250 at 596 (2d ed. 1972); Marshall, Fitzhugh and Helvin, The Law of Evidence in Virginia and West Virginia § 137 (Nash ed. 1954); Falknor, *The "Hear-Say" Rule as a "See-Do" Rule: Evidence of Conduct*, 33 Rocky Mtn. Law Rev. 133, 137-38 (1961). *See also United States* v. *Ross*, 321 F.2d 61, 69 (2d Cir. 1963), *cert. denied*, 375 U.S. 894. This type of conduct has the same infirmities as the more familiar oral form of hearsay and should likewise be excluded.

■ In the present case, the act by Mrs. Stevenson came in response to the question of the officer as to what the defendant was wearing when he returned home from Ashland as well as the officer's request to obtain that clothing. Thus, the conduct of Mrs. Stevenson was intended as a nonverbal assertion for the purpose of showing that the shirt not only belonged to Stevenson but was in fact worn by him on the day of the crime. Moreover,

it formed the basis of the Commonwealth's argument that he was wearing the shirt at the time the crime was committed. Accordingly, the officer's testimony relating to the shirt was inadmissible as violative of the hearsay rule, and the introduction into evidence of the shirt and the result of the scientific tests conducted thereon was without proper foundation.

For the reasons stated, the judgment of the court below is reversed and the case remanded for a new trial.

*Reversed and remanded.*