JAMES EDWARD MANETTA

V.

COMMONWEALTH OF VIRGINIA

Record No. 850340

March 7, 1986

Present: All the Justices

*Clifford R. Weckstein (Richard M. Thomas; Lichtenstein, Weckstein & Thomas*, on brief), for appellant.
*Eugene Murphy, Assistant Attorney General (William G. Broaddus, Attorney General*, on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

Tried by a jury, James Edward Manetta was convicted of capital murder and robbery and was sentenced to life plus five years imprisonment. We granted an appeal limited to the single question whether the trial court erred by admitting hearsay testimony. The facts pertinent to this question may be summarized briefly and will be stated in the light most favorable to the Commonwealth.

On July 31, 1981, a forest ranger found the body of Cathy Lynn Dooley in the woods in the Jefferson National Forest. She had been killed by blows to the head which caused fractures of the skull and jaw. No personal belongings or items of identification were found near the body. In March 1982, a 12-year-old girl named Becky Etzler found a purse containing Cathy Dooley's identification and papers on Becky's grandmother's property five miles west of Fincastle. Becky's father called Norman Sprinkle, the Sheriff of Botetourt County, who took custody of the purse. Becky pointed out to the sheriff the spot where she had found the purse.

Manetta had confessed to a friend, Michael Fulcher, that he had killed Cathy Dooley, taken her purse, and thrown it out of his car along the road. While Manetta and Fulcher were driving together, Manetta pointed out the general location where he had thrown the purse. Fulcher, a convicted felon, had been a friend of Manetta's for many years. The friendship between the two came to an end when Manetta testified against Fulcher in a burglary case in October 1981. See *Fulcher* v. *Commonwealth*, 226 Va. 96, 306 S.E.2d 874 (1983). Thereafter, Fulcher told Sheriff Sprinkle of Manetta's confession. Fulcher accompanied the sheriff to the place where Manetta had told Fulcher he had thrown the purse. Fulcher pointed the place out to the sheriff. It was in close proximity to the place where Becky Etzler had recovered the purse, about two tenths of a mile away.

At trial, Fulcher testified to Manetta's confession and told the jury that he had shown Sheriff Sprinkle the place where Manetta said he had thrown the purse. Becky Etzler also testified to her recovery of the purse and told the jury that she had shown Sheriff Sprinkle exactly where she found it. The defense made no objection, on hearsay or other grounds, to the testimony of these witnesses which recounted their own earlier statements and conduct in this respect.

After both Fulcher and Becky had testified, the Commonwealth called Sheriff Sprinkle as a witness. The defense objected on hearsay grounds to any testimony by the sheriff which might embody the out-of-court declarations of Fulcher.[1]

After hearing a tender of the evidence outside the jury's presence, the court decided that it was not offered to prove or corroborate the truth of the out-of-court declarations of the other witnesses, but was offered merely to adduce the fact that the physical locations of the two places pointed out to the sheriff were in close proximity. The court instructed the Commonwealth that the sheriff could not testify that Fulcher had told him that Manetta had pointed out the place where the purse was thrown. The evidence was admitted in the following form:

Q. Now, I believe I then asked you if the little Etzler girl, Becky Etzler, pointed out a place to you on the ground?

---

[1] The defense made no objection to the sheriff's testimony concerning the out-of-court declarations of Becky Etzler. That omission, however, does not affect the result.

A. Yes, sir.

Q. And I asked you did you make a note of that in your mind or words to that effect?

A. Yes, sir.

Q. All right; now, subsequent to this, did Mike Fulcher, the witness who has preceded you to the stand, also point out a place to you on the ground?

A. Yes, sir, on October 28th, 1982.

Q. And how did the place that Michael Fulcher pointed out to you compare to the place where Becky Etzler pointed out to you, in terms of proximity?

A. From where Becky Etzler pointed this out, it was right in the same vicinity as to where she had found the wallet that Mike Fulcher had pointed out to me where it had been discarded.

Q. All right, and could you just give the Jury an estimate of how far off, how far it was between the two places?

A. Yes, sir, from the beginning where I was told the pocketbook was discarded, it was two-tenths of a mile from that point to where the pocketbook was found in the Etzler driveway.

Manetta relies on *Stevenson* v. *Commonwealth*, 218 Va. 462, 237 S.E.2d 779 (1977), for the proposition that assertive conduct is within the hearsay rule. There, we said:

> Nonverbal conduct of a person intended by him as an assertion and offered in evidence to prove the truth of the matter asserted falls within the ban on hearsay evidence . . . . This type of conduct has the same infirmities as the more familiar oral form of hearsay and should likewise be excluded.

*Id.* at 465, 237 S.E.2d at 781 (citations omitted). Thus, Manetta argues, the act of Fulcher in pointing out the place where the purse was allegedly thrown was intended by Fulcher as an assertion. The sheriff's testimony, therefore, rested upon the credibility of Fulcher, who was an out-of-court asserter when he pointed to that place. Manetta contends that because the sheriff's testimony

rested in part upon this out-of-court assertive conduct, it was inadmissible hearsay.

Manetta also argues that the trial court's error in admitting the evidence was particularly egregious, and could not be harmless, because Fulcher's credibility was very bad. Fulcher not only admitted to a number of prior felony convictions, but also demonstrated bias arising from hostility toward Manetta and from lenient treatment Fulcher hoped to receive in exchange for his cooperation with the Commonwealth. Sheriff Sprinkle, on the other hand, had served Botetourt County as its sheriff for 26 years and was a highly respected public officer. Manetta argues that the sheriff's repetition of Fulcher's declaration served to bolster Fulcher's credibility and could only serve as strong corroboration of Fulcher's testimony, to which the jury would otherwise give little weight.

■ Although Manetta correctly states the general principles applicable to evidence of assertive conduct, we do not agree with his conclusion. Trial courts are often required to analyze the real purpose for which evidence is offered. The hearsay rule excludes out-of-court declarations only when they are "offered for a special purpose, namely, as *assertions to evidence the truth of the matter asserted." Richard Eckhart* v. *Commonwealth*, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981) (quoting 6 J. Wigmore, Evidence § 1766 at 251 (Chadbourn rev. 1976)). If the court can determine, from the context and from the other evidence in the case, that the evidence is offered for a different purpose, the hearsay rule is no barrier to its admission. *Church v. Commonwealth*, 230 Va. 208, 212, 335 S.E.2d 823, 825-26 (1985); *see Upchurch v. Commonwealth*, 220 Va. 408, 410, 258 S.E.2d 506, 507-08 (1979); *Patty v. Commonwealth*, 218 Va. 150, 159, 235 S.E.2d 437, 442 (1977), *cert. denied*, 435 U.S. 1010 (1978); *Clodfelter v. Commonwealth*, 218 Va. 98, 103-04, 235 S.E.2d 340, 343, *rev'd on other grounds*, 218 Va. 619, 238 S.E.2d 820 (1977); *Foster v. Commonwealth*, 209 Va. 297, 303, 163 S.E.2d 565, 569 (1968); *Fuller v. Commonwealth*, 201 Va. 724, 729, 113 S.E.2d 667, 670-71 (1960).[2]

---

[2] In *Upchurch, Foster,* and *Fuller,* the trial courts gave limiting instructions to the jury to the general effect that the out-of-court declarations were admitted only to explain the actions of those who heard them and were not to be considered as evidence of the truth of the matters asserted. Manetta would have been entitled to such an instruction here but, doubtless for sound tactical reasons, made no such request. The court was not required to give such an instruction *sua sponte*. Such instructions may sometimes give particular em-

■ The trial court correctly reasoned that the evidence was not offered to corroborate Fulcher's testimony or to prove that any of Fulcher's assertions were true. Fulcher had testified and had been vigorously cross-examined in the jury's presence. His credibility depended upon his in-court testimony and his demeanor, which the jury had a first-hand opportunity to weigh. The sheriff's testimony was offered to prove an entirely different fact, *i.e.*, that two points in Botetourt County lay only two tenths of a mile apart. The truth of that fact depended on the sheriff's personal familiarity with the area and measurements he had made. It was in no way dependent upon the truthfulness of either Fulcher or Becky Etzler.

Manifestly, the sheriff could not describe the relationship between two points on the ground unless he identified them by some reference which pertained to the case. Identification by latitude and longitude, or by map coordinates, would have been meaningless to the jury. He therefore properly described them as the place Fulcher had pointed out and the place Becky had pointed out, respectively. In doing so, he merely explained his points of reference in terms which would make sense in the context of the case. He did not lend his own credibility to vouch for the truthfulness of either declarant and did not corroborate their testimony in any way.[3] He had no means of knowing whether either declarant had told him the truth. His testimony contained nothing from which

phasis to the portions of testimony specifically mentioned by the judge, a result the parties may wish to avoid.

[3] If the sheriff had been permitted to testify to the *details* of Fulcher's statements to him, a different result might be reached. The jury might then infer that Fulcher's credibility was enhanced, as the defendant argues, because he had told the same story at an earlier time, consistent with his present testimony. Prior *consistent* statements are ordinarily admissible only in limited circumstances, *e.g.*: (1) to rehabilitate a witness after he has been impeached by showing a prior *inconsistent* statement, *Clere* v. *Commonwealth*, 212 Va. 472, 473, 184 S.E.2d 820, 821 (1971); (2) to meet a charge of recent fabrication or of motive to fabricate, *Skipper* v. *Commonwealth*, 195.Va. 870, 876-77, 80 S.E.2d 401, 405 (1954); *see also Graham* v. *Danko*, 204 Va. 135, 138, 129 S.E.2d 825, 827 (1963); and (3) as evidence of the identification of a person after perceiving him, *Niblett* v. *Commonwealth*, 217 Va. 76, 82, 225 S.E.2d 391, 394 (1976). *See also* Federal Rules of Evidence, Rule 801(d)1, (B) and (C). Here, the limitations imposed by the trial court on the sheriff's testimony avoided any such bolstering of Fulcher's credibility.

the jury could infer his belief concerning their truthfulness or lack of it.

Accordingly, the judgment will be

*Affirmed.*