*511 UPON A REHEARING EN BANC
ELDER, Judge.
On December 9,1993, a jury convicted James Lloyd Jenkins (appellant) of aggravated sexual battery, in violation of Code § 18.2-67.3. On appeal to this Court, appellant contended: (1) that juror misconduct violated his constitutional right to a fair and impartial trial; (2) that the trial court erred in allowing expert testimony on an ultimate fact in issue; (3) that the trial court erred in allowing the expert witness to testify to a hearsay statement made by the sexually abused child; and (4) that the evidence was insufficient to prove his conviction.
In Jenkins v. Commonwealth, 21 Va.App. 222, 463 S.E.2d 330 (1995), a divided panel of this Court reversed appellant’s conviction and remanded the case. The majority held that the trial court erred in (1) allowing the expert to testify to an ultimate fact in issue, and (2) in allowing the expert to testify to a hearsay statement of the child. The opinion did not address the other contested issues. The third judge, although concurring that the trial court erred in allowing the expert to testify to an ultimate fact in issue, dissented with respect to the hearsay issue, opining that the trial court properly admitted the child’s statement made during treatment.
We granted rehearing en banc, and upon rehearing, we affirm appellant’s conviction. We hold: (1) that the trial court did not violate appellant’s constitutional right to a fair and impartial trial when it refused to dismiss a juror on the grounds of juror misconduct; (2) that the trial court erred in allowing expert testimony on an ultimate fact in issue in the case but that such error was harmless; (3) that the trial court did not err in allowing the expert witness to testify to the child’s statement made during treatment; and (4) that the evidence sufficiently proved appellant’s conviction.
I.
FACTS
The evidence proved that the victim, a male child born on February 26, 1990, was cared for by his grandparents during *512 the weekdays while his parents worked. Appellant, the child’s uncle, often visited the child’s grandparents when the child was present. The indictment charged that appellant committed aggravated sexual battery on the child during the period September 1992 through March 1993.
On April 14, 1993, a Youth Services Unit investigator with the Henrico County Police Department met with appellant. Appellant first denied any sexual contact with the child but then admitted to one incident with the child, which occurred in approximately February 1993. The investigator testified as to what appellant told' him:
He said that he was sitting in the living room watching TV, and that [the child] was sitting in his lap, leaning against his chest, and he said that he began to start having sexual fantasies as to how [the child] would be when he got older and more mature. He said that he put his hand on [the child’s] penis from over top his clothing and held it there and touched him there for about a minute. He said while doing this, he was having sexual thoughts about having oral sex with [the child] if he were older.
Appellant told the investigator that during this incident his penis became semi-erect because “he just wanted somebody to love and he was real emotional during this time and actually cried for a while.” Appellant also related this incident in a written statement.
During the Commonwealth’s case-in-chief, a licensed clinical psychologist testified that he conducted ten counseling sessions with the child, beginning on March 31, 1993. During direct examination, the following exchange occurred between the Commonwealth’s Attorney and the psychologist:
Q: ... After these sessions, Sir, or some time during these sessions, were you able to form an opinion to a reasonable degree of certainty in your expertise as to whether [the child] was suffering from any psychological disorder?
A: Yes, Ma'am.
Q: And what opinion is that, Sir?
*513 A: That [the child] suffers from an adjustment disorder with mixed emotional—mixed—features of emotion and conduct.
Q: Do you have an opinion to a reasonable degree of certainty, in your expertise, what adjustment disorder—why he had suffered from this adjustment disorder, Sir?
A: An adjustment disorder is a persistent or unusual reaction to some identifiable stress.
Q: And in this case, what—what opinion do you have as to that identifiable stress?
A: That he had been sexually abused.
The psychologist also described the methods that he had used to form his opinion, including interviews with and observations of the child. The psychologist testified, over defense counsel’s objection, that on one occasion the child told him that he “had been sexed” and made corresponding body movements to describe what being “sexed” meant. When asked where he had been “sexed,” the child pointed to his groin area. The psychologist also testified that, on another occasion, the child used two anatomically correct male dolls to demonstrate a sexual act.
After the presentation of evidence, one of the jurors notified the trial court that he had worked with appellant ten years earlier. Although the juror did not realize this fact before or during much of the trial, the juror told the trial court that his memory was triggered when appellant’s father testified. The trial court questioned the juror in the following manner:
Court: Would [your prior relationship with appellant] affect you in any way in being able to reach a decision in this case?
Juror: Um, honestly I already had a decision made—
Court: Sir.
Juror: This came up, so I guess not. You know, it shouldn’t really affect my decision.
*514 Court: You haven’t reached a decision before the case was tried—had you reached a decision before the case was tried?
Juror: I mean, I had my opinions, yeah. You know, while going through it, and I just realized it right before the father came up here. That’s when it struck me.
Appellant: We’d move for a mistrial, Your Honor.
Court: Can you—the last—I don’t want to lead you, Sir, but when you came in here this morning, I asked you—
Juror: When I came here—right, when I came in here this morning, I had no clue.
Court: You had—did you know anything about this case, in any fashion?
Juror: No. None whatsoever.
Court: Now I asked you this morning could you determine the evidence, from what you heard here in the courtroom, apply it to the law as I instruct you that it is, and we have not told you what the law is, and reach a decision. You recall that?
Juror: Yes, Sir.
Court: I asked you—told you you shall decide no issue in this case until the matter is submitted to you from your deliberation under the instructions of the Court. Do you recall that?
Juror: Yes, Sir.
Court: Have you decided any issue in the case, or is your mind open?
Juror: No. I’m just saying I have taken in everything, you know, I’m just weighing and balancing in my own head.
Court: All right, Sir. Well do you, do you or do you not? Just tell me. Is your mind open? Can you go in there and listen to your jurors, discuss what the evidence is?
Juror: Yeah. Yeah. But I knew that, you know, if I knew anybody, I should not be in here, and I just realized. I thought I should say something.
*515 The Commonwealth’s Attorney also asked the juror, “[a]nd the fact that you may have known him, would that in any way cause you not to be able to render a fair and impartial verdict, based solely on the evidence that you’ve heard and the law that you’re going to read and hear by the Court?” The juror responded, “[njone whatsoever.”
Upon questioning from appellant’s counsel, the juror admitted that he and appellant had had a disagreement over work scheduling when he worked for appellant, causing them to yell at each other. However, the juror stated that no “hard feelings” remained after the disagreement. The juror also reiterated to appellant’s counsel that he had not formed an opinion as to appellant’s guilt or innocence and that he would wait for the trial court’s instructions. Appellant again moved for a mistrial, but the trial court overruled the motion, ruling that the juror indicated he could remain impartial to the cause and that he had not yet made up his mind.
The jury convicted appellant of the offense charged in the indictment. Code § 18.2-67.3(A)(1) states that “[a]n accused shall be guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and ... [t]he complaining witness is less than thirteen years of age.”
II.
JUROR MISCONDUCT
As the Commonwealth contends, “the mere fact of juror misconduct does not automatically entitle either litigant to a mistrial.” Robertson v. Metropolitan Washington Airport Auth., 249 Va. 72, 76, 452 S.E.2d 845, 847 (1995). “Instead, the trial court, in the exercise of sound discretion, must determine whether such misconduct probably resulted in prejudice. And the burden of establishing that probability is upon the party moving for a mistrial.” Id. A trial court’s decision that a juror can be fair and impartial is entitled to great weight on review. Watkins v. Commonwealth, 229 Va. 469, 480, 331 S.E.2d 422, 431 (1985), cert. denied, 475 U.S. 1099, 106 S.Ct. 1503, 89 L.Ed.2d 903 (1986).
*516 After hearing all of the evidence, the juror indicated that he had formed an opinion about the case and had reached his tentative decision before recalling that he knew appellant. However, the juror never stated whether he had concluded in his own mind that appellant was guilty or innocent. Moreover, it appears that the juror made these statements to assuage the trial court’s fears that he harbored animus towards appellant. In other words, the juror, who had already heard all of the evidence, meant to convey that he had not allowed his prior relationship with appellant to affect his evaluation of the evidence. Upon thorough questioning by the trial court and by both counsel, the juror assured the trial court that he could deliberate and reach a verdict after discussion with his fellow jurors.
The Supreme Court of Virginia has generally “limited findings of prejudicial juror misconduct to activities of jurors that occur outside the jury room.” Caterpillar Tractor Co. v. Hulvey, 233 Va. 77, 83, 353 S.E.2d 747, 751 (1987)(holding that juror misconduct was not sufficient to set aside the verdict when one juror told the others that he was a lawyer and opined that the case was “garbage”). Haddad v. Commonwealth, 229 Va. 325, 329 S.E.2d 17 (1985), relied on by appellant, is not directly applicable to this case because it involved juror activity outside of the jury room. In Haddad, a juror made a comment to a third party defense attorney during a break in the trial, stating that the defendant was “not going to get off’ and asking the attorney if he felt guilty about helping to free criminal defendants. The trial court thereafter fully questioned the juror about his statements before concluding that the juror could give both parties a fair trial and refrain from prejudging the defendant’s guilt. Id. at 328, 329 S.E.2d at 19. The Supreme Court stated that juror misconduct occurred and framed the issue for review as “whether juror misconduct in the form of expressions of opinion made by a juror to third persons during the trial proceedings should result in a mistrial.” Id. at 329, 329 S.E.2d at 19-20. The Court held that a mistrial should have been granted because the defendant proved a probability of prejudice and that the *517 juror was no longer impartial, despite promises to the trial court to the contrary. Id. at 330-31, 329 S.E.2d at 20.
In this case, the juror never expressed to a third party any animus toward appellant or toward criminal defendants in general. Furthermore, the juror never stated whether he had concluded that appellant was guilty or innocent. Thus, appellant’s potential prejudgment of the case differs from the juror’s prejudgment in Haddad. We hold that the trial court did not abuse its discretion in declining to declare a mistrial based on juror misconduct. See Commercial Union Ins. Co. v. Moorefield, 231 Va. 260, 343 S.E.2d 329 (1986).
III.
ULTIMATE FACT IN ISSUE
Appellant argues that the trial court erred in allowing the expert to testify that the child had been sexually abused. We agree but hold that such error was harmless in light of the other evidence adduced at trial.
The expert’s statement that, in his opinion, the child had been sexually abused was inadmissible under Cartera v. Commonwealth, 219 Va. 516, 248 S.E.2d 784 (1978). In Cart-era, the Supreme Court stated the following well-accepted principle: “In any proper case, an expert witness may be permitted to express his opinion upon matters not within common knowledge or experience. Opinion testimony, however, is not admissible ‘upon the precise or ultimate fact in issue.’ ” Id. at 519, 248 S.E.2d at 786 (quoting Webb v. Commonwealth, 204 Va. 24, 33, 129 S.E.2d 22, 29 (1963)). Consistent with the Cartera rule, we hold that the expert’s testimony in this case that the child had been sexually abused expressed an opinion on the ultimate fact in issue (i.e., that the charged offense occurred). The psychologist opined not as to what could have been the causative stressor but rather what *518 was the causative stressor.[1] The psychologist’s testimony went to the ultimate fact in issue and invaded the jury’s province as the fact finder. Cartera, 219 Va. at 519, 248 S.E.2d at 786.
We also hold that the trial court’s error in admitting this evidence was harmless. When an element of the crime is fully established by other competent evidence, an error in improperly admitting evidence with respect to that point is harmless. See Rozier v. Commonwealth, 219 Va. 525, 528, 248 S.E.2d 789, 791 (1978); Lavinder v. Commonwealth, 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991)(en banc); Code § 8.01-678.
In this case, the Commonwealth’s evidence included testimony from the child’s mother of multiple instances of bizarre sexually-oriented behavior by the child. The expert’s testimony also showed the child’s familiarity with sexual acts. Most probative was appellant’s admission that he participated in one sexual episode with the child. The trial court instructed the jurors that sexual abuse had been committed if the evidence showed that appellant had “with the intent to sexually molest, arouse or gratify any person, ... intentionally touch[ed] the complaining witness’ intimate parts or clothing covering such intimate parts.” See Code § 18.2-67.10(6).
The facts contained in appellant’s confession proved these elements. Appellant confessed that while holding the child on his lap, he began to have sexual fantasies about the child. Appellant admitted that he placed his hand on the child’s penis and held it there for a minute, during which time appellant had sexual thoughts about having oral sex with the child when the child was older. Based on these facts, the error in admitting the expert’s testimony was harmless. Rodriguez v. Commonwealth, 249 Va. 203, 208, 454 S.E.2d 725, 728 (1995)(holding that in the face of conclusive proof of guilt, any *519 error in admitting an expert’s testimony on the ultimate fact in issue was “utterly harmless”).
IV.
USE OF CHILD’S STATEMENT MADE TO PSYCHOLOGIST
Appellant next contends that the trial court erred in allowing the psychologist, who offered expert testimony, to testify to the child’s héarsay statement that he had been “sexed.” We hold that the trial court properly admitted this portion of the psychologist’s testimony.
First, as many other jurisdictions have held, because the child’s statement as made to the expert was not offered for its truth, the statement did not qualify as hearsay. The child’s statement that he had been “sexed” conveyed information that clearly formed the basis for the expert’s diagnosis of the child’s adjustment disorder, regardless of its truth or falsity.[2] See, e.g., Howle v. PYA/Monarch, Inc., 288 S.C. 586, 344 S.E.2d 157 (Ct.App.1986)(holding that a psychiatrist who examined defendant, his patient, after a car accident could testify as to conversations he had with the defendant; such statements were not offered for their truth but for the basis of his diagnosis); Brown v. State, 649 S.W.2d 160 (Tex.Ct.App.1983)(holding that a physician who examined a child victim shortly after an alleged molestation could relate *520 the child’s statements regarding the attack; such statements were admitted to show the basis of the physician’s opinion, not for their truth); State v. Wade, 296 N.C. 454, 251 S.E.2d 407 (1979)(holding that a psychiatrist should have been allowed to testify as to the content of conversations with the defendant, his patient, in order to show the basis for his diagnosis); Dickens v. Adams, 137 Ga.App. 564, 224 S.E.2d 468 (1976)(holding that statements made by psychiatrist’s patient were not inadmissible as hearsay, as the psychiatrist was not expressing a belief as to the truth or falsity of the statements, but merely expressing the basis of his opinion concerning the cause of the patient’s anxiety and depression); Jones v. State, 289 So.2d 725, 727 (Fla.1974)(holding that “in general, a statement by an injured or diseased person to a physician as to past matters, although not admissible as evidence of the truth of the facts stated, may be included in the physician’s testimony to show the basis for his opinion”); Goldstein v. Sklar, 216 A.2d 298 (Me.1966)(holding that a physician’s testimony to medical history related by a patient is admitted to show the basis for the physician’s professional opinion as to the nature of the patient’s illness, rather than to show the truth of the matters related by the patient).
In this case, the expert testified that the child suffered from an adjustment disorder with mixed features of emotion and conduct and that an adjustment disorder is a persistent or unusual reaction to some identifiable stressor. The psychologist described the methods he used to form his opinion as to the identifiable stressor, which included interviews with and observations of the child. The psychologist testified that the child told him that he “had been sexed” and made corresponding body movements to describe what being “sexed” meant. When asked where he had been “sexed,” the child pointed to his groin area. This information was not offered to prove that sex had actually occurred with the child but rather to show how the expert reached his opinion concerning the child’s *521 identifiable stressor.[3]
This “not-for-truth” exception is a difficult rule to apply in the context of real cases. It has always caused controversy, and presumably will always do so, because it is often arguable whether the declaration is being offered to prove the truth of the content of the declaration or not, and lawyers and judges may quite reasonably reach different conclusions on this question in any given case....
Part of the difficulty in “not-for-truth” situations is due to the fact that often such evidence will have a dual nature; the declaration may indeed be relevant on some matter unrelated to the truth of the content of the statement, and yet the content of the statement may go to the issues of the case as well. See, e.g., Donahue v. Commonwealth, [225 Va. 145, 300 S.E.2d 768 (1983) ]. This is perhaps the situation which creates the greatest dilemma for the courts. In that regard, however, it should be remembered that it is a time-honored principle of evidence law that, in general, if evidence is admissible for any purpose, it is admissible.
2 Charles E. Friend, The Law of Evidence in Virginia § 18-3, at 95-96 (4th ed.1993)(footnote omitted); see Hanson v. Commonwealth, 14 Va.App. 173, 416 S.E.2d 14 (1992).
Even if the child’s statement constituted hearsay, it may still have been introduced if it fell within one of the many established hearsay exceptions. See Evans-Smith v. Commonwealth, 5 Va.App. 188, 197, 361 S.E.2d 436, 441 (1987). Cartera provides an exception to the hearsay rule permitting “a physician to testify to a patient’s statements concerning his ‘past pain, suffering and subjective symptoms’ to show ‘the basis of the physician’s opinion as to the nature of the injuries or illness.’ ” Cartera, 219 Va. at 518, 248 S.E.2d at 785-86. A physician may also testify as to his or her observations of a *522 patient’s physical and emotional conditions and may “state what examinations and tests he performed upon the victims and what medical conclusions he reached as a result.”[4] Id. at 519, 248 S.E.2d at 786. A physician may not, however, “recite the details of the offenses and the description of the assailant, as reported to him [or her] by the victim[ ].” Id.
In this case, the trial court followed Cartera’s guidelines in ' allowing the psychologist’s testimony regarding the child’s statement that he had been “sexed.” The child’s statement assisted the expert in identifying the stressor underlying the child’s mental condition. The expert did not recite the details of a specifically identified offense nor did he offer any description of the abuser.[5] The trial court, therefore, did not err in allowing this testimony to be introduced.
V.
SUFFICIENCY OF THE EVIDENCE
Finally, appellant contends that the evidence was not sufficient to prove the charge. On appeal, the evidence must be viewed in the light most favorable to the Commonwealth and be given all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). “The jury’s verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it.” Traverso v. Commonwealth, 6 Va.App. 172, 176, 366 S.E.2d 719, 721 (1988); Code § 8.01-680.
*523 As detailed in Section III, supra, and examined under the familiar standards of appellate review, we hold that the Commonwealth presented sufficient evidence to support appellant’s conviction.
Based on the foregoing reasons, we affirm appellant’s conviction.

Affirmed.

. One of the diagnostic criteria for "adjustment disorder” is a "reaction to an identifiable psychological stressor (or multiple stressors).” DSMIII-R (Diagnostic & Statistical Manual of Mental Disorders 329-30 (3d ed. rev. 1987).

. According to 31A Am.Jur.2d Expert and Opinion Evidence § 187 (1989 &Supp. 1996):
In testifying as an expert on a person’s mental condition ... a psychiatrist or psychologist may rely on, as one basis for his or her opinion, statements made by or conversations held with the party in question.... The results of interviews conducted necessarily become a part of the expert’s opinion. The witness is not expressing a belief as to the truth or falsity of the statements, but is merely expressing the basis for his or her professional opinion concerning the cause of the patient’s mental condition.
(Footnotes omitted)(emphasis added). See also Annotation, Admissibility of Testimony of Expert, As to. Basis of his Opinion, to Matters Otherwise Excludible as Hearsay—State Cases, 89 A.L.R.4th 456 (1991 & Supp.1995).

. In a parallel example, if a doctor diagnoses a patient as suffering from a herniated disc and testifies that the patient described having back pain, this testimony might be offered not for the truth of the matter (i.e., whether back pain actually existed), but rather for the fact that back pain was reported to the doctor and formed the basis of the doctor’s diagnosis.

. A physician may also relate statements made by a child patient for the purpose of establishing the child’s state of mind. M.E.D. v. J.P.M., 3 Va.App. 391, 401, 350 S.E.2d 215, 222 (1986).

. Contrary to the assertion in Judge Benton's dissent, our analysis would not allow the expert to repeat the disclosure that the child names appellant, nor would it allow the expert to relate detailed circumstances surrounding the abuse. Details about the abuser or the abuse would have been irrelevant to the expert’s opinion regarding the underlying stressor, and may have been more prejudicial than probative. This is what Cartera precludes.