Wednesday          6th

November, 1996.


Floyd Keith Brown,                                          Appellant,

 against        Record No. 0753-95-2
                Circuit Court Nos. 94-214-1 through 94-214-4

Commonwealth of Virginia,                                   Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court


On October 8, 1996, came the appellee, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on September 24, 1996, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on September 24, 1996, is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellee shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

A Rehearing <u>En</u> <u>Banc</u> was granted in this case on November 6, 1996.

COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Overton
Argued at Alexandria, Virginia


FLOYD KEITH BROWN

                    OPINION BY
v.  Record No. 0753-95-2                                    JUDGE
JAMES W. BENTON, JR.
                                        SEPTEMBER 24, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                      Jay T. Swett, Judge

            Leon F. Szeptycki (Bruce M. Steen; Charles
            R. Haugh; Lair Dayton Haugh; McGuire, Woods,
            Battle & Boothe, L.L.P.; Haugh & Haugh,
            P.C., on briefs), for appellant.

            Eugene Murphy, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.



        A jury convicted Keith Floyd Brown of statutory burglary, rape, and two counts of forcible sodomy.  Brown contends that the trial judge erred in ruling that two statements offered by the defense were hearsay and prohibiting their introduction at trial.  We agree that the statements were not hearsay.  Because the errors were not harmless, we reverse the convictions and remand for a new trial.

                                    I.

        The complainant testified at trial that a man entered her apartment early in the morning of June 25, 1994, beat her, sexually assaulted her, and raped her.  She left her apartment a short time later and told the police that a man who had raped her was asleep in her apartment.  The police arrested Brown at the complainant's

                                  - 2 -

apartment that morning.  The complainant denied ever having seen Brown before he broke into her apartment.

Brown told the police after his arrest that he had consensual sexual intercourse with the complainant.  At trial, Brown testified that he and the complainant were acquaintances and that she admitted him to her apartment.  He denied using any force or violence upon the complainant.

Two defense witnesses testified that Brown and the complainant knew each other prior to the incident.  One of the witnesses, Charles Gentry, testified that he observed Brown and the complainant together on at least two or three occasions.  The trial judge admitted evidence that Gentry observed Brown and the complainant conversing but refused to allow Gentry to testify that the two were discussing the trading of sex for cocaine.

The trial judge also refused to allow a police officer's testimony that Brown "asked [the officer] twice if Peggy [, the complainant,] knew he was [at the police station]."  The trial judge ruled the statement was hearsay.  During Brown's testimony, the trial judge overruled the Commonwealth's objection and allowed Brown to testify, however, that he "asked the officer did [the complainant] know [he] was at the police station."

Brown appeals the trial judge's refusal to admit Gentry's testimony as to the content of the overheard conversation and the police officer's testimony concerning the question Brown asked at the police station.  The Commonwealth contends that defense counsel waived objection to the admission of each statement, that the trial judge correctly ruled that the statements were hearsay, and that the trial

judge's refusal to admit the statements, if erroneous, was harmless error.

## II.

"Hearsay is a statement, other than one made by the declarant while testifying at trial, which is offered to prove the truth of the matter asserted." Clark v. Commonwealth, 14 Va. App. 1068, 1070, 421 S.E.2d 28, 30 (1992). "Unless it is offered to show its truth, an out-of-court statement is not subject to the rule against hearsay and is admissible if relevant." Church v. Commonwealth, 230 Va. 208, 212, 335 S.E.2d 823, 825 (1985).

At trial, defense counsel sought to introduce testimony that Gentry "ha[d] seen [Brown] and [the complainant] together on more than one occasion . . . [and that] on one occasion, he overheard a conversation between [Brown] and [the complainant] involving trading sex and cocaine that took place in the area of Gibson's store." The Commonwealth objected to the testimony on the ground that the rape shield law had not been satisfied. Ruling that the fact, but not the content, of the conversation was admissible, the trial judge stated:

> Gentry is not going to offer evidence with regard to sexual conduct, but a conversation. . . .
>
> This witness [, the complainant,] was never asked and did not testify so as to deny about any conversation with regard to trading sex for drugs, so that conversation cannot be offered for impeachment purposes because it is hearsay, and she has not been impeached on that point. But I will permit [Gentry] to testify about having observed, if the person that this woman that [defense counsel] referred to is the victim, clearly this witness should be permitted to testify with regard to seeing the two in the presence of the other prior to June 25.
>
> But as to the conversation, it is

>                    otherwise hearsay, and she has not, she did
>                    not deny such a conversation existed, so she
>                    can't be impeached on that point.

The Commonwealth claims that Brown waived his objection to this issue because he never specifically argued that the testimony was not hearsay.

Arguments over the admissibility of Gentry's testimony cover approximately ten pages of the record. Brown proffered the testimony as admissible evidence and urged the trial judge to admit the testimony because it related "just a conversation between the two parties." In considering whether the testimony was admissible, the trial judge discussed the rape shield statute and raised the issue of hearsay. Thus, the trial judge was alerted to the possibility of error and had the opportunity to take corrective actions. Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992).

Brown's counsel consistently maintained that the testimony was admissible. Furthermore, Code § 8.01-384 has eliminated the requirement that counsel make formal exceptions to rulings or orders of the trial judge. "Requiring [Brown] to 'object' after this refusal would, in effect, recreate the requirement of noting an exception to a final adverse ruling of the trial judge." Martin, 13 Va. App. at 530, 414 S.E.2d at 404. Counsel's argument was sufficient as an objection to preserve the issue for appeal.

The Commonwealth also asserts that defense counsel conceded the issue by stating, "I see what your Honor is saying." We disagree. The record discloses that counsel's remark was in response to the trial judge's question whether a different statement by a different witness was substantive evidence and could be impeached.

Whether the content of the proffered conversation is hearsay depends upon the evidentiary purpose for introducing the statements. "If the court can determine, from the context and from the other evidence in the case, that the evidence is offered for a . . . purpose [other than to establish the truth of the facts asserted], the hearsay rule is no barrier to its admission." Manetta v. Commonwealth, 231 Va. 123, 127, 340 S.E.2d 828, 830 (1986). Brown's defense rested upon proving that he and the complainant knew each other and had consensual sexual intercourse. In offering the evidence, Brown's counsel stated that the purpose of Gentry's testimony was to prove that Brown was well acquainted with the complainant.

Gentry's testimony was offered as evidence to prove the fact that the statements about trading sex for cocaine were made. Thus, it is not hearsay. See Manetta, 231 Va. at 127-28, 340 S.E.2d at 830. Whether the parties were speaking the truth when they discussed trading sex for cocaine is not at issue. The truth or falsity of their out-of-court statements is not important. The mere fact that they had the conversation is what is important. Out-of-court statements are not hearsay when offered merely to show that the conversation occurred. Id.

Conceding that the fact of the conversation is admissible but arguing that the content is inadmissible, the Commonwealth states that the "offer of sex for crack cocaine no more proves a prior relationship between parties than any other conversation." That argument addresses the relevance of the evidence, not whether it is hearsay. Certainly, the fact that Brown and the complainant had talked to each other in public before the alleged sexual assault is

- 6 -

relevant because it tends to prove that they knew each other.

However, the Commonwealth's argument fails to recognize that both strangers and acquaintances engage in conversations and that the content of the conversation may tend to establish the fact of the acquaintance. For example, if the witness had testified that he only overheard one of the parties ask, "Can you give me directions to the nearest bus station?," then the content of the conversation would have tended to prove that the individuals did not know each other. Conversely, testimony that the individuals discussed trading sex for cocaine would have tended to prove that the individuals had more than a casual acquaintance. In introducing Gentry's testimony, Brown was seeking to prove not only that the individuals had spoken to each other but also that they had a more substantial acquaintance.

Thus, the content of the conversation Gentry overheard "was not hearsay, but was admissible as circumstantial evidence tending to establish the probability of a fact in issue." Church, 230 Va. at 212, 335 S.E.2d at 825. "Any fact, however remote, that tends to establish the probability or improbability of a fact in issue is admissible." Horne v. Milgrim, 226 Va. 133, 139, 306 S.E.2d 893, 896 (1983). Gentry's testimony, if believed by the jury, would have tended to prove an element of Brown's defense.

### III.

Brown also contends that the trial judge should have allowed a police officer's testimony that Brown "asked [the officer] twice if Peggy [, the complainant,] knew [Brown] was here." The trial judge sustained the Commonwealth's hearsay objection. When Brown's counsel stated, "I don't think it is hearsay," the trial judge ruled,

- 7 -

"[o]bjection sustained.  It is hearsay.  I note your objection."

For a statement to be considered hearsay, the statement must contain an assertion of fact.  "If a statement is offered for any purpose other than to prove the truth or falsity of the content of the statement, such as to explain the declarant's conduct or that of the person to whom it was made, it is not objectionable as hearsay."  Hamm v. Commonwealth, 16 Va. App. 150, 156, 428 S.E.2d 517, 521 (1993).  "According to the very definition of hearsay, an inquiry [or question] is not an assertion and therefore does not constitute hearsay."  Bolen v. Paragon Plastics, Inc., 754 F. Supp. 221, 225 (D. Mass. 1990).  Accord United States v. Lewis, 902 F.2d 1176, 1179 (5th Cir. 1990); State v. Carter, 651 N.E.2d 965, 971 (Ohio), cert. denied, 116 S. Ct. 575 (1995); Washington v. State, 589 A.2d 493, 495 (Md. 1991).

In determining Virginia law, the Supreme Court of Virginia has held that "[t]he rule against hearsay prohibits . . . the admission of extra-judicial statements 'only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted.'"  Church, 230 Va. at 211-12, 335 S.E.2d at 825 (citation omitted)(emphasis added).  The decision in Krulewitch v. United States, 336 U.S. 440 (1949), does not compel a different result because it decided a different evidentiary issue under federal law.  The Court summarily concluded that statements admitted in evidence at a federal conspiracy trial were hearsay and held that because the statements were not made in furtherance of a conspiracy they were improperly admitted by the trial judge on that ground.  Id. at 442-43.

Likewise, the decision in Dutton v. Evans, 400 U.S. 74

(1970), based on the constitutional right to confrontation, is not dispositive of the hearsay issue. In Dutton, the Court assumed without discussion that the statements were hearsay. However, the appellant in Dutton argued "only that the hearsay exception applied by [the State of] Georgia [was] constitutionally invalid because it [did] not identically conform to the hearsay exception applicable to conspiracy trials in the federal courts." Id. at 80. The Supreme Court rejected that argument and held that "a long-established and well-recognized rule of state law . . . [does not] violate the Constitution merely because it does not exactly coincide with the hearsay exception applicable in the decidedly different context of a federal prosecution for the substantive offense of conspiracy." Id. at 83. These federal cases do not change the Virginia rule that an out-of-court statement, which is not offered to show its truth, "is not subject to the rule against hearsay and is admissible if relevant." Church, 230 Va. at 212, 335 S.E.2d at 825-26.

The trial judge prohibited the police officer from stating that Brown asked him if the complainant knew he was at the police station. Nothing within the question contains an assertion of fact. The truth or falsity of Brown's question to the officer is not at issue. See Hamm, 16 Va. App. at 156, 428 S.E.2d at 521. Therefore, the question is not barred by the hearsay rule. Accordingly, we need not address Brown's alternative argument that even if the statement is hearsay, it is admissible under the state-of-mind exception.

IV.

Brown sought to introduce both statements to prove that he was acquainted with the complainant before the morning of June 25. If

- 9 -

the trial judge had not barred the evidence and the jury found Gentry and the police officer to be credible witnesses, the jury would have had a basis upon which it could have found that the complainant lied concerning her relationship with Brown. Because the complainant and Brown agreed that sexual relations occurred but differed on whether the acts were consensual, the credibility of each "was paramount in determining the ultimate issue of guilt or innocence." Evans-Smith v. Commonwealth, 5 Va. App. 188, 210, 361 S.E.2d 436, 448 (1987).

The error was not harmless. "'[A] fair trial on the merits and substantial justice' are not achieved if an error at trial has affected the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991)(en banc)(quoting Code § 8.01-678). Although the Commonwealth introduced physical evidence of disarray in the apartment and the complainant's injuries as proof of the sexual offenses, the question of rape or consent ultimately rested upon the jury's determination of credibility. It is well settled that the credibility of witnesses, the weight accorded witnesses' testimony, and the inferences to be drawn from proven facts are matters that are within the province of the fact finder. Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986).

Furthermore, a harmless error analysis is not merely a sufficiency of the evidence analysis. Hooker v. Commonwealth, 14 Va. App. 454, 458, 418 S.E.2d 343, 345 (1992). The evidence in this case was disputed. Even if "the other evidence amply supports the jury's verdicts, [error is not harmless when] the disputed testimony may well have affected the jury's decision." Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978). Where, as here, the trial judge

excludes evidence that tends to support the defendant's theory of the case, that error cannot be cured merely by weighing the merits of the Commonwealth's evidence. The harmful error lies in improperly denying the defendant an opportunity to put before the jury evidence to rebut the Commonwealth's evidence.

Moreover, the critical issue in this case had to be resolved by the jury's determination of the credibility of the parties. If the jurors had been given the opportunity to hear the prohibited testimony, they may have resolved the credibility conflict in Brown's favor and accepted his version of the events. Thus, we cannot "conclude, without usurping the jury's fact finding function, that, had the error[s] not occurred, the verdict would have been the same." Barrett, 231 Va. at 107, 341 S.E.2d at 193.

We reverse the convictions and remand the case to the circuit court for retrial if the Commonwealth be so advised.

Reversed and remanded.

Coleman, J., concurring in part and dissenting in part.

I disagree with the majority's holding that the trial court erred by excluding Officer Matthew Berryman's proffered testimony.  In my view, Officer Berryman's testimony is hearsay and does not come within any recognized hearsay exception.  Furthermore, although I concur in the majority's holding that the trial court erred by refusing to admit Charles Gentry's testimony that he purportedly overheard a conversation between the victim and defendant before the alleged offense in which the topic of conversation was exchanging cocaine for sex, I believe the error was harmless.  Therefore, I would affirm the defendant's convictions.

### I.  Officer Berryman's Testimony

In my opinion, Officer Matthew Berryman's proffered testimony that the defendant asked him at the police station after being arrested "whether Peggy [the victim] knew he was here" was inadmissible hearsay and the trial judge did not err by so ruling.

> Whether an extrajudicial statement is hearsay depends upon the purpose for which it is offered and received into evidence. If the statement is received to prove the truth of its content, then it is hearsay and, in order to be admissible, must come within one of the many established exceptions to the general prohibition against admitting hearsay.

Hanson v. Commonwealth, 14 Va. App. 173, 187, 416 S.E.2d 14, 22 (1992).

> Part of the difficulty in "not-for-truth" situations is due to the fact that often such evidence will have a dual nature; the declaration may indeed be relevant on some matter unrelated to the truth of the content of the statement, and yet the content of the statement may go to the issues of the case as well.  See, e.g., Donahue v.

- 12 -

> Commonwealth, [225 Va. 145, 300 S.E.2d 768 (1983)]. This is perhaps the situation which creates the greatest dilemma for the courts. In that regard, however, it should be remembered that it is a time-honored principle of evidence law that, in general, if evidence is admissible for _any_ purpose, it is admissible.

Jenkins v. Commonwealth, 22 Va. App. 508, 521, 471 S.E.2d 785, 791 (1996) (en banc) (quoting 2 Charles E. Friend, The Law of Evidence in Virginia § 18-3, at 95-96 (4th ed. 1993) (footnote omitted)).

The majority holds that, by definition, an inquiry or question such as that asked by the defendant is not an assertion and does not constitute hearsay. However, the defendant was saying or asserting, in effect, "I know Peggy personally." See, e.g., Dutton v. Evans, 400 U.S. 74, 91 S. Ct. 210, 27 L.Ed.2d 213 (1970); Krulewitch v. United States, 336 U.S. 440, 69 S. Ct. 716, 93 L.Ed. 790 (1949); United States v. Reynolds, 715 F.2d 99 (1983). See also Laurence H. Tribe, Triangulating Hearsay, 87 Harv. L. Rev. 957, 958 (1974); Ronald J. Bacigal, Implied Hearsay: Defining the Battle Line Between Pragmatism and Theory, 11 S. Ill. U. L.J. 1127, 1141 (1987). The statement was being offered by the defendant and was relevant only to prove that the defendant personally knew the victim. In order for the jury to infer from the statement that the defendant knew the victim, it would have had to determine the truth or falsity of the implied assertion. The statement's probative value depended entirely upon the truth of an inferred fact that the statement implied and as such it was hearsay.

The mere fact that the defendant made the statement to Officer Berryman was not relevant for any other purpose and the fact that the statement was made in no way proved the defendant's

relationship with the victim unless the truthfulness of the implied assumptions were accepted. Therefore, in my opinion, the statement was offered to prove the truth of its content and it was inadmissible hearsay.[1]

## II. Charles Gentry's Testimony

As to Charles Gentry's proffered testimony that he purportedly overheard a conversation between the defendant and the victim on an occasion before the alleged crimes about trading crack cocaine for sex, I agree with the majority's holding that the trial court erred by excluding this testimony. However, the trial judge ruled correctly that the fact the conversation purportedly occurred was admissible to prove that the defendant and the victim knew one another. The fact that the conversation took place would also have been relevant to impeach the victim if the jury found Gentry's evidence credible. Nevertheless, the defendant did not seek to introduce that evidence after the trial court ruled that Gentry could not testify as to the nature and particulars of the conversation that he purportedly overheard.

I concur with the majority that Gentry should have been allowed to testify to the nature and content of the alleged conversation to prove that the defendant and victim knew one another and the nature of that relationship. Gentry would have testified that he had seen the victim and the defendant together on two or three occasions before the charged incident and that on one occasion the conversation was about trading sex for cocaine. "The

---

[1] The defendant ultimately testified that he asked Officer Berryman if "Peggy [knew that he was] . . . down at the police station."

admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). The trial court had discretion to limit the extent to which the witness will be permitted to give the details and particulars of the conversation. However, because the alleged conversation was relevant to prove the nature of the relationship between the victim and the defendant, which fact was material to prove whether the sexual intercourse was consensual or forcible, it was error to preclude Gentry from testifying about the general content of the alleged conversation.

Although I concur in the majority's holding that the trial court erred by refusing to admit Charles Gentry's testimony concerning the alleged conversation between the victim and the defendant and its content, I would hold that the error was harmless. "A defendant is entitled to a fair trial but not a perfect one." Lutwak v. United States, 344 U.S. 604, 619, 73 S. Ct. 481, 490, 97 L.Ed. 593 (1953). Because the defendant conceded that he had sexual intercourse with the victim, the only issue for the jury to decide was whether the intercourse was accomplished through the use of physical force. In my opinion, evidence independent of the victim's testimony and without regard to her credibility proved overwhelmingly that the defendant used force to accomplish sexual intercourse. See Jenkins v. Commonwealth, 244 Va. 445, 454, 423 S.E.2d 360, 366 (1992); Goins v. Commonwealth, 218 Va. 285, 288, 237 S.E.2d 136, 138-39 (1977). Thus, whether the jury believed Gentry that the conversation had taken place or whether the fact of such a

conversation would have affected the victim's credibility would have had no bearing upon the jury's deciding that the defendant used force to have sexual intercourse with the victim.  Therefore, in my opinion, neither the jury's guilty verdict nor its recommended sentence would have been affected by admitting Charles Gentry's testimony.

> In Virginia, non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached."  "[A] fair trial on the merits and substantial justice" are not achieved if an error at trial has affected the verdict.   . . . An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.

Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting Code § 8.01-678).

Here, overwhelming evidence, independent of the victim's testimony, proved that the defendant used physical force to accomplish sexual intercourse with the victim.  A passing motorist testified that on the night of the alleged crimes she saw the victim "running down the road naked."  The victim stopped the motorist and attempted to enter her car.  According to the motorist, the victim was "bloody" and "scared to death."

When the police arrived, they found the victim in the back seat of the motorist's car wrapped in a sheet which the motorist had provided.  Officer R. L. Shaner testified that the victim's right eye was "swollen and bruised."

The police went to the victim's apartment and found the defendant sleeping.  A later analysis of his blood showed that he had

- 16 -

consumed cocaine. The police found a chair outside the victim's apartment placed against the wall below the kitchen window. The window sill into the apartment was bent and the screen to the kitchen window was damaged. Palm prints that were later identified as belonging to the defendant were found on the kitchen sink facing inward from the kitchen window. The defendant's shoes were on the kitchen sink, and dirt on the shoes appeared to match the dirt in the victim's backyard. Furniture had been knocked over in the apartment, and blood was found in approximately eight different areas on a bed sheet. Blood was also found on the victim's t-shirt.

A doctor examined the victim that night and stated that the victim was "clearly nervous and jittery." The victim's right eye was bleeding and swollen shut, and she had red marks on her forehead. In addition, she had several scratches on her right front thigh, several red marks on her throat, and dried blood on her head, hair, and perineum. Her nose was bloody, and there was blood under all of her fingernails. Her perineum was slightly swollen and red.

The defendant told the police that he went to the victim's apartment because he had obtained marijuana for her, and that they did not consume all of the marijuana. However, the police found no marijuana in the apartment, and an analysis of the victim's blood did not test positive for marijuana. Furthermore, although the analysis of the defendant's blood tested positive for cocaine, it showed no trace of marijuana. A forensic expert testified that marijuana would be present in a person's blood for at least twenty-four hours after the last use.

In response to the victim's claim that she had bitten her

attacker's thumb, the police examined the defendant's thumb when he was arrested and found bite marks. The bite marks were open and raw and appeared to be very recent.

In light of this overwhelming evidence, I do not believe that the admission of Charles Gentry's testimony that he claims to have overheard a conversation between the defendant and victim tending to prove that they knew one another and discussed trading cocaine for sex would have affected the jury's guilty verdict. See Hanson, 14 Va. App. at 191, 416 S.E.2d at 24 (holding that certain hearsay statements that should have been excluded were nonetheless "inconsequential" in light of the overwhelming evidence of the accused's guilt).

Likewise, in my opinion the trial court's error did not affect the defendant's sentence. The fact that the jury recommended the maximum sentence on all four counts does not require a finding that the error affected the jury's sentence recommendations; rather, we must evaluate the seriousness, as well as the number, of the errors. See Yager v. Commonwealth, 220 Va. 608, 615, 260 S.E.2d 251, 256 (1979).

At the sentencing phase in this bifurcated trial, the Commonwealth proved that in 1993 the defendant had been convicted of sodomy and assault and battery; in 1991 he had been convicted of grand larceny and breaking and entering; in 1990 he had been convicted of driving as an habitual offender and possession of cocaine; in 1989 he was convicted of petit larceny and escape; and in 1985 he had been convicted of breaking and entering.

In my opinion, the jury's sentence recommendations were influenced by the brutality of the crimes against this victim and by

the defendant's record of multiple felony convictions, and the verdict and sentences would not have been affected by the trial court admitting Charles Gentry's testimony that he purportedly overheard a conversation between the defendant and the victim.

In summary, I disagree with the majority's holding that the trial court erred by refusing to admit Officer Berryman's testimony about the defendant's out-of-court statement.  Furthermore, although I agree that it was error to exclude Charles Gentry's testimony concerning the nature and subject matter of the conversation that he allegedly overheard, I would hold that the error was harmless. Accordingly, I respectfully concur in part and dissent in part and disagree that the convictions should be reversed.