COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


RICHARD WILLIAM WEBB, A/K/A
 RICHARD W. WEBB
                                   MEMORANDUM OPINION[*] BY
v.   Record No. 0122-96-2         JUDGE MARVIN F. COLE
                                      JUNE 10, 1997
COMMONWEALTH OF VIRGINIA

              FROM THE CIRCUIT COURT OF NORTHUMBERLAND COUNTY
                    Joseph E. Spruill, Jr., Judge

         Gordon A. Wilkins (Charles J. McKerns, Jr.;
         Wilkins & Davison; McKerns & McKerns, on
         brief), for appellant.

         Pamela A. Rumpz, Assistant Attorney General
         (James S. Gilmore, III, Attorney General, on
         brief), for appellee.


     Following a bench trial, Richard William Webb (defendant)
was found guilty of capital murder, aggravated malicious wounding
and related firearm charges.  He was sentenced to life
imprisonment on each of the greater charges and statutory
mandatory sentences on the firearms counts.  Defendant contends
that the trial court erred in permitting the prosecution's expert
medical witness to testify on the ultimate fact at issue in the
aggravated malicious wounding charge, namely, whether the victim
was severely injured and was caused to suffer permanent and
significant physical impairment.  Finding no reversible error, we
affirm the conviction.

---

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

To prove aggravated malicious wounding, the Commonwealth had the burden of proving that appellant committed an offense under Code § 18.2-51.2 which "severely injured" the victim and caused him "to suffer permanent and significant" physical impairment. "On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

The Commonwealth's evidence is undisputed. The defendant did not put on any evidence to contradict the testimony of the prosecution witnesses. The evidence shows that on February 27, 1995, defendant shot and killed his grandmother, Peggy Webb, in the trailer where she lived with her husband. After murdering his grandmother, defendant turned the rifle on his grandfather, Julian Webb (Webb), and shot him in the left wrist. The bullet penetrated Webb's wrist and lodged in his cheek. After being shot, Webb fled the scene on foot as the defendant fired additional shots at him. Webb was carried to the hospital and treated by Dr. Ronald H. Patterson for injuries to his wrist and face. He was discharged from the hospital on March 2, 1995, with his arm in a cast.

At trial, Webb testified that he threw his left arm up to ward off the bullet and the bullet went through the left wrist and hit his right cheek. Webb testified that he remained under Dr. Patterson's care, that the arm still bothered him and that

2

this would continue the rest of his life.  He stated that fragments from the shot remained in both his wrist and cheek.  Webb testified that he was a commercial fisherman and that he had not returned to work since the shooting because his hand burns and hurts when he moves it.  Webb was still taking pain medication at the time of trial.

Dr. Patterson, an orthopedic surgeon, qualified as an expert in the field of orthopedics and testified that Webb came under his care at MCV Hospital for a gunshot wound to the left wrist.  According to his testimony, "Webb had a through and through gunshot wound.  Through the left wrist with an entrance and exit wound in the distal forearm just proximate to the left wrist.  The slug from the gunshot wound continued into his right cheek and lodged in the right maxillary sinus of his face, facial bone."  He stated that fragments remained in both the wrist and the face.  Dr. Patterson testified that Webb would lose some function and motion of his left wrist and would be left with some traumatic arthritis of his left wrist.  Dr. Patterson testified that his prognosis was that Webb

> had several degrees of loss of motion. Approximately five degrees in each plane, which means to me five degrees of extension, five degrees of flexion, five degrees of ulnar deviation and five degrees of radial deviation that he had lost secondary to his injury.  He had also lost a few degrees of supination . . . .  A loss of about ten degrees of supination . . . .

Over defendant's objection, Dr. Patterson was permitted to

3

testify further that, based upon his education, training and experience, it was his opinion that Webb would suffer permanent injuries from the gunshot wounds and that the injuries were significant.

The Supreme Court has stated the following generally accepted principle:  "In any proper case, an expert witness may be permitted to express his opinion upon matters not within common knowledge or experience.  Opinion testimony, however, is not admissible 'upon the precise or ultimate fact in issue.'"  Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978) (quoting Webb v. Commonwealth, 204 Va. 24, 33, 129 S.E.2d 22, 29 (1963)).  See also Jenkins v. Commonwealth, 22 Va. App. 508, 517, 471 S.E.2d 785, 790 (1996) (en banc).

> However, it is equally as well settled that expert opinion and testimony are admissible "where the jury, or the court trying a case without a jury, is confronted with issues which require scientific or specialized knowledge or experience in order to be properly understood, and which cannot be determined intelligently merely from the deductions made and inferences drawn on the basis of ordinary knowledge, common sense, and practical experience gained in the ordinary affairs of life."

Compton v. Commonwealth, 219 Va. 716, 726, 250 S.E.2d 749, 755-56 (1979) (citation omitted).  An expert medical witness can testify concerning any physical evidence he observes at the crime scene and in general he can testify as any other expert witness about facts within his knowledge.  He can testify about his examination and tests he performed and what medical conclusions he reached as

4

a result, except that he is precluded from testifying as to the precise ultimate issue. See 2 Charles E. Friend, The Law of Evidence in Virginia, § 17-17 (4th ed. 1993).

Because of the view we take on the issue, it is unnecessary for us to decide whether the testimony of Dr. Patterson that Webb suffered permanent and significant physical impairment constituted testimony upon the ultimate issue in the case. For this opinion, we will assume that his testimony was improper and should not have been admitted. We hold that the admission of such evidence was harmless error.

A nonconstitutional error is harmless if "it plainly appears from the record and the evidence given at trial that the error did not affect the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc). "An error does not affect a verdict if a reviewing court can conclude, without usurping the [trial court's] fact finding function, that, had the error not occurred, the verdict would have been the same." Id. An error may be harmless because other evidence of guilt is "so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict." Hooker v. Commonwealth, 14 Va. App. 454, 458 n.2, 418 S.E.2d 343, 345 n.2 (1992); see also Hanson v. Commonwealth, 14 Va. App. 173, 189-90, 416 S.E.2d 14, 24 (1992) (error inconsequential in comparison to uncontradicted evidence of guilt). An error in admitting expert testimony is harmless where an accused "has had

a fair trial according to law, and the proof is conclusive of his guilt." Rodriguez v. Commonwealth, 249 Va. 203, 208, 454 S.E.2d 725, 728 (1995).

We find as a matter of law that the undisputed testimony of Webb and the admissible testimony of Dr. Patterson constitute overwhelming evidence that Webb's injuries were severe and that he suffered permanent and significant impairment as a result. That evidence showed that Webb continued under Dr. Patterson's care at the time of trial, that the injured arm still caused Webb burning and pain and that Webb's condition would continue for the rest of his life. The evidence showed that bullet fragments remained in Webb's wrist and cheek, that a thumb-sized scar remained on Webb's cheek and that, because of his condition, Webb could no longer engage in his work as a commercial fisherman. Dr. Patterson's admissible testimony corroborated Webb's loss of function and motion in his wrist and his prognosis included the development of traumatic arthritis in Webb's wrist.[1]

Dr. Patterson's inadmissible testimony was insignificant in light of the overwhelming evidence concerning the severity of the injury and the permanency of the impairment. To be sure, the trial judge's comment with respect to needing the help of a

---

[1]While Dr. Patterson could not distinguish between arthritis which he expected to develop in Webb's wrist as a result of the gunshot and that which would develop as a result of age, his opinion that Webb would sustain "a certain degree of traumatic arthritis of [the] left wrist joints" and that Webb "will have significant symptoms in that wrist . . . for the remainder of his life at times," was unequivocal and unrebutted.

medical expert reflects the medical complexity of the issue the court faced. That comment, however, does not lead us to conclude that the trial court would have reached a different finding on the ultimate facts at issue had Dr. Patterson not offered an opinion with respect to them. Indeed, it is evident from other comments that the court considered evidence other than the opinion erroneously admitted in making its ultimate finding. With respect to severity, the trial judge stated, "I think to be shot in the face would be severe in almost any circumstances," and in concluding that Webb's injuries were permanent, the court noted Webb's range of motion in his wrist "was limited in almost every sphere." Finally, to the extent the evidence raises a question concerning the extent of Webb's disability to work and perform household chores, we note that the victim's disability is not an element of the crime.

In sum, we find that Dr. Patterson's statement that the injuries were permanent and significant, when considered with the other testimony, had no effect upon the decision of the trial judge. Accordingly, we find the error to be harmless and affirm the conviction.

<u>Affirmed.</u>

Benton, J., dissenting.

I would hold that the trial judge erred in allowing Dr. Ronald H. Patterson to give his expert opinion about whether Richard Webb's grandfather "suffer[ed] permanent and significant physical impairment," an ultimate issue of fact under Code § 18.2-51.2. In addition, I disagree with the majority's conclusion that the error was harmless. Accordingly, I dissent.

I.

To prove Webb committed the offense of aggravated malicious wounding, the Commonwealth had to prove that Webb's grandfather, "the victim[, was] . . . severely injured and [was] caused to suffer permanent and significant physical impairment." Code § 18.2-51.2. The principle is well settled, however, that expert "[o]pinion testimony . . . is not admissible 'upon the precise or ultimate fact in issue.'" Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978) (citation omitted).

At trial, both the grandfather and Dr. Patterson, the grandfather's treating physician, testified about the grandfather's injuries. Over defense counsel's objection, Dr. Patterson gave the following testimony, which is at issue in this appeal:

> COUNSEL: Based on your education, training and experience and on the history taken here and on your examination of the patient do you have an opinion based on reasonable medical probability as to two questions, A, the causal connection of the injuries for which you treated him and B, whether [the grandfather] will suffer permanent and significant physical impairment?

8

A:  Yes, sir, I do.

COUNSEL:  All right.  And what is your opinion?

A:  I think his injury was due to a gunshot wound through and through near the left wrist.  <u>I think he will suffer permanent injury from this gunshot wound</u>.  I think he will lose some function and motion of his left wrist and I think he will be left with some traumatic arthritis of his left wrist.

\*   \*   \*   \*   \*   \*   \*

COUNSEL:  <u>And would you consider those items that you testified to as being significant</u>?

A:  <u>Yes, sir, I would</u>.

(Emphasis added.)

These essential elements of the offense were ultimate facts at issue in this prosecution.  See <u>Nicholas v. Commonwealth</u>, 91 Va. 741, 750, 21 S.E. 364, 366–67 (1895); <u>see also</u> <u>Webb v. Commonwealth</u>, 204 Va. 24, 32–33, 129 S.E.2d 22, 29 (1963).  Thus, the trial judge erred in allowing Dr. Patterson to testify that, in his expert opinion, the grandfather's injuries were permanent and significant.

## II.

I disagree with the majority's conclusion that the trial judge's error in allowing Dr. Patterson to give his expert opinion on the ultimate issues was harmless.  The error was not harmless because it does not "'plainly appear[] from the record and the evidence given at the trial that' the error did not affect the verdict."  <u>Lavinder v. Commonwealth</u>, 12 Va. App. 1003,

9

1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting Code § 8.01-678).  The majority reasons that "the admissible testimony . . . constitute[s] overwhelming evidence" that the grandfather's injuries were permanent and significant.  I disagree.

The severity of the grandfather's injury was disputed at trial.  The grandfather testified that he was sixty-five years old and had been a commercial fisherman until the shooting.  He stated that he could no longer engage in his trade as a commercial waterman.  He testified that his injury still bothered him, that it still burned, and that he thought it would bother him "as long as [he] live[d]."  He testified that his cheek bone was broken and that the wound was still numb.  When asked whether he thought his arm would ever return to normal, he answered, "no."  On cross-examination, however, the grandfather testified that he "can move [his] hands all right" but he has not tried to pick up anything.  He also testified that he had accompanied his son on his son's work boat since the incident.  He further testified that there is not really anything that he is prevented from doing around his house.

Dr. Patterson testified and described the grandfather's injuries as follows:

> [The grandfather] had had a through and through gunshot wound through the left wrist with an entrance and exit wound in the distal forearm just proximal to the left wrist.  The slug from the gunshot wound continued into his right cheek and lodged in the right maxillary sinus of his face, facial bone.

Although Dr. Patterson testified that the grandfather had lost several degrees of motion of his wrist, he also testified, contrary to the grandfather's testimony, that the grandfather's injuries should not prevent him from engaging in his job as a commercial fisherman. He further testified that the injuries would not prevent the grandfather from performing normal household chores. He diagnosed the grandfather with permanent arthritis to his wrist, but he stated that he could not distinguish between arthritis caused by the gunshot wound and arthritis caused by the grandfather's age.[2] Moreover, Dr. Patterson had not determined whether the grandfather was suffering from arthritis in other areas of his body.

The majority discounts the importance of the conflict in the evidence because "the victim's disability is not an element of the crime." That assertion is simply unsupported by the law. See Code § 18.2-51.2 (stating that an element of aggravated malicious wounding is a "permanent and significant physical impairment") (emphasis added).

Given the conflicting evidence, this is not a case in which "the other evidence of [the permanence and significance of the injury] was so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict." Hooker v. Commonwealth, 14 Va. App. 454, 457 n.2, 418 S.E.2d 343,

_____

[2]In view of this testimony, the fact that the doctor's opinion was unrebutted clearly does not lead to a conclusion that the arthritis was caused by the gunshot wound.

11

345 n.2 (1992).  Moreover, "[o]ther evidence of a disputed fact, standing alone, does not establish that an error is harmless.  If so, a harmless error analysis would be simply a sufficiency of the evidence analysis."  Id. at 458, 418 S.E.2d at 345.  Even if "the other evidence amply supports the . . . verdict[], the [error is not harmless when] disputed testimony may well have affected the . . . decision."  Cartera, 219 Va. at 519, 248 S.E.2d at 786.

The record in this case clearly established that the expert's opinion "carr[ied] great weight . . . and could very well have been the decisive factor in [the trier of fact's] mind[] in determining [Webb's] guilt."  Callahan v. Commonwealth, 8 Va. App. 135, 140, 379 S.E.2d 476, 479 (1989).  Indeed, in overruling defense counsel's objection and admitting Dr. Patterson's testimony, the trial judge stated "I don't think we can make it without the help of medical experts."  Certainly, in view of that statement alone, we cannot say that if the expert had been prohibited from testifying that the injuries were "significant," the trial judge would not have decided that the injury was not "significant."

The majority states that the judge's comments show that the judge "considered evidence other than the opinion erroneously admitted."  The majority cites two statements made by the judge but fails to demonstrate that the doctor's inadmissible opinion did not lead the judge to make those statements.  Moreover, that

12

the judge considered other evidence does not rule out the possibility that the judge also considered the erroneously admitted evidence. Thus, we cannot "conclude, without usurping the . . . fact finding function, that, had the error not occurred, the verdict would have been the same." Lavinder, 12 Va. App. at 1005, 407 S.E.2d at 911.

For these reasons, I would hold that the trial judge erred in allowing Dr. Patterson to give his expert opinion as to the permanency and significance of the grandfather's injuries. Because the error may have affected the judge's decision, I would hold that the error was prejudicial and reverse the conviction. Accordingly, I dissent.