**VIRGINIA:**

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond, on Friday, the 12th day of April, 2013.

Present: Kinser, C.J., Lemons, Goodwyn, Millette, and Powell, JJ., and Lacy and Koontz, S.JJ.

William Charles Morva,                                    Petitioner,

 against          Record No. 102281

Warden of the Sussex I State Prison,          Respondent.


Upon a Petition for a Writ of Habeas Corpus

Upon consideration of the petition for a writ of habeas corpus filed December 3, 2010, and the respondent's motion to dismiss, the Court is of the opinion that the motion should be granted and the writ should not issue.

Petitioner, William Charles Morva, was convicted in the Circuit Court of Washington County of capital murder while in custody, Code § 18.2-31(3), capital murder of a law-enforcement officer, Code § 18.2-31(6), capital murder of more than one person within a three-year period, Code § 18.2-31(8), assaulting a law-enforcement officer, Code § 18.2-57(C), escape, Code § 18.2-478, and two counts of use of a firearm in the commission of murder, Code § 18.2-53.1. After finding the aggravating factors of vileness and future dangerousness, the jury fixed Morva's sentence at

death for each of the three capital murder convictions and sixteen years' imprisonment for the remaining convictions. The trial court sentenced Morva in accordance with the jury's verdicts. This Court affirmed Morva's convictions and upheld his sentence of death in Morva v. Commonwealth, 278 Va. 329, 683 S.E.2d 553 (2009), cert. denied, ___ U.S. ___, 131 S.Ct. 97 (2010).

## CLAIM (I)

In claim (I), Morva alleges that a juror concealed information during voir dire that, if disclosed, would likely have resulted in the juror's exclusion from the jury panel for cause. Morva contends juror Richard M. Bouck failed to disclose that he had two relatives in law-enforcement who were also close friends, that he knew the relatives were within the scope of the voir dire question, and that he intentionally chose not to reveal those relationships.

Morva argues that had Bouck disclosed this information, which Morva did not discover until after his direct appeal was final, Bouck could have been stricken for cause and, as a result of Bouck's failure to disclose the relationships, Morva's Sixth Amendment right to an impartial jury was violated. The Court holds that this claim is without merit.

2

In support of this claim, Morva relies on the affidavit of a law student who interviewed jurors on Morva's behalf, after Morva's appeal became final. The law student describes an interview with Bouck and relates a number of hearsay statements purportedly made by Bouck. The record, including Bouck's affidavit, demonstrates that Bouck and the interviewer discussed two men who worked in law-enforcement, Bouck's step-mother-in-law's nephew and a former co-worker's brother. In his affidavit, Bouck asserts that he "barely know[s] either of these men. They are, at best, mere acquaintances. They are not relatives or close friends."

Morva fails to proffer any evidence, such as affidavits from Bouck's friends or family or from the individuals Bouck identified as persons known to him to be in law-enforcement, to support his allegation that Bouck failed to answer honestly when asked by the trial court if he had "any close friends or family members or associates who are employed in law enforcement." Thus, Morva has failed to demonstrate that juror Bouck failed to answer honestly a material question during voir dire and he has consequently failed to show he was denied the right to an impartial jury. See McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984).

3

CLAIM (II)(A)

In claim (II)(A), Morva asserts his due process rights were violated because he was visibly restrained during trial. Morva alleges he wore visible handcuffs upon entering and exiting the courtroom while jurors were present, wore leg restraints that were visible to jurors beneath counsel table, and wore a stun belt under his clothing that was sufficiently bulky to attract attention. Morva also alleges that the remote control for the stun belt held by an officer in proximity to Morva was visible to the jury.

The Court holds claim (II)(A) is barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), cert. denied, 419 U.S. 1108 (1975).

CLAIM (II)(B)

In claim (II)(B), Morva asserts he was denied the effective assistance of counsel because counsel failed to object to any restraints Morva was made to wear during trial, absent a judicial determination of necessity. In addition, he asserts that counsel failed to ensure that the restraints were invisible and failed to ensure that

4

security and court personnel were advised that the jurors should not see or learn about the restraints.

Morva contends counsel should have taken remedial steps, such as placing litigation bags or boxes in front of counsel table, monitoring strict compliance with the rule that restrained defendants not be moved into or out of the courtroom when jurors are present, and providing Morva with a blazer to hide the bulge from the stun belt. Morva contends he was prejudiced because the visible restraints undermined the presumption of innocence, and, at sentencing, underscored the message presented by the Commonwealth that he was a danger to society. He asserts that this contributed to his decision not to take the stand to present evidence of his "fear that he would die if he remained in, or was returned to, the toxic Montgomery County [J]ail."

The Court holds claim (II)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). The record, including the manuscript record, the affidavits of several jurors, and the affidavit of Charles Partin, Master Deputy with the Montgomery County Sheriff's Office, who was responsible for coordinating transportation and security for Morva in connection with

5

his trial, demonstrates that Morva's right to a fair trial was not undermined by courtroom security. The record indicates that all visible restraints were removed from Morva prior to the jurors entering the courtroom; Morva wore a stun belt that was beneath his clothing and thus designed to be invisible to jurors, and a leg-stiffening restraint strapped to Morva's leg was worn under his pants and was not visible on the outside of his clothing. Accordingly, Morva's allegation that he wore restraints visible to the jurors and was prejudiced because visible restraints undermined the presumption of innocence, or at sentencing indicated he was a danger to society, has no merit.

Although some jurors executed affidavits after the trial stating that during the trial they became aware that Morva was wearing a stun belt, Morva proffers no evidence to suggest Morva's counsel was or should have been aware any juror had learned that information during trial. Because Morva was not visibly restrained in the presence of the jury and because there is no evidence that counsel was or should have been aware that jurors had learned Morva was wearing a stun belt under his clothing, trial counsel's failure to object to the restraints or stun belt placed on Morva was not deficient performance. Moreover, the

6

security measures were justified given Morva's demonstrated history, which showed a willingness to use violence to effect and maintain an escape from custody, and were not inherently prejudicial.  See Porter v. Commonwealth, 276 Va. 203, 263, 661 S.E.2d 415, 446 (2008).  Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

CLAIM (III)

In a portion of claim (III), Morva asserts he was denied the effective assistance of counsel because counsel failed to point out that Jennifer Preston, who witnessed Morva shoot Derrick McFarland, was not looking at McFarland at the time of the shooting and could not have seen the gestures McFarland made.  Morva contends he interpreted McFarland's "movements" as an attempt to draw a weapon and that Morva did not know until later that McFarland was unarmed.

Morva also argues that counsel did not use Preston or other witnesses to "point out the significance of the dark, Special Weapons and Tactics [S.W.A.T.] team/paramilitary-style uniform McFarland wore that night."  Counsel failed to note that the dark color of the uniform and the multiple

7

pockets and bulges made it difficult to detect the absence of a weapon, which would have rebutted the Commonwealth's assertion that Morva knew McFarland was unarmed.

The Court holds that this portion of claim (III) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates Preston testified that the events she witnessed, including the shooting, took mere seconds. She testified that she observed McFarland standing very still with his hands outstretched in a supplicating gesture, and Morva standing very still and pointing a gun at McFarland. She stated she clearly saw the expression on each man's face, and then she saw Morva shoot McFarland. There is no evidence in the record, and Morva proffers none, that Preston was not looking at McFarland when Morva pulled the trigger.

The witnesses testified that McFarland's uniform consisted of a dark shirt with a patch and matching trousers. Morva does not proffer any evidence, nor is there any in the record, to support his claim that McFarland's uniform was paramilitary or likely mistaken for that of armed law-enforcement personnel. Furthermore, Morva fails to provide evidence of any gestures made by

8

McFarland that would indicate he was reaching for a firearm before he was shot.

Even if McFarland was armed and was wearing a paramilitary type uniform, Morva shot McFarland as he stood in front of Morva with his hands in a supplicating gesture. Counsel was not ineffective for failing to raise a frivolous argument that Morva was justified in shooting McFarland. Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (III), Morva contends he was denied the effective assistance of counsel because counsel failed to obtain a corrective jury instruction when Preston testified improperly that McFarland looked at her with "warning eyes to tell me there was danger." Although counsel objected that the statement was speculative, and the court agreed, counsel did not ask for a curative instruction. Morva contends the jury was instructed that they may not arbitrarily disregard believable testimony, and as there was nothing innately unbelievable about Preston's testimony, the jury was compelled to consider it. Morva contends further that the error was compounded

9

because Preston was also allowed to testify that McFarland "looked scared," and "like he was trying to appease [Morva]," who was "scowling" and "looking angry."

The Court holds that this portion of claim (III) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that counsel objected to Preston's speculation as to what information she perceived McFarland was attempting to impart to her, which objection was sustained. Thus, such testimony was not admitted into evidence.

Preston was permitted to describe what she observed, and she demonstrated for the jury how McFarland was standing. Preston also testified that she was in the hallway with McFarland and Morva, that Morva was standing two feet from McFarland pointing a "big gun" at McFarland's face while McFarland stood very still with his hands outstretched, and that Morva then shot McFarland. Under these circumstances, Morva cannot demonstrate that counsel's failure to ask for a curative instruction concerning Preston's perceptions of the information the victim was attempting to convey with his facial expression was deficient performance. The testimony was excluded from evidence and to ask for a curative instruction may have

10

emphasized the testimony. See Manetta v. Commonwealth, 231 Va. 123, 127 n.2, 340 S.E.2d 828, 830 n.2 (1986). Such tactical decisions are an area of trial strategy left to the discretion of counsel and should not be second-guessed in habeas corpus. See Strickland, 466 U.S. at 689-90. Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (III), Morva maintains he was denied the effective assistance of counsel because counsel failed to adequately cross-examine Officer Brian Roe. Morva contends that Roe's testimony regarding Eric Sutphin's gun holster being snapped shut contradicted other witnesses who reported, but did not testify, that upon seeing Sutphin's body later, the weapon was in its holster, but the holster was unsnapped. Morva contends this information supports his account that he believed Sutphin was drawing a weapon, that he warned Sutphin not to draw his weapon, and that Morva only fired after the warning was given.

The Court holds that this portion of claim (III) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. No

11

witnesses testified that Deputy Sutphin's holster was unsnapped and Officer Roe could not have been cross-examined on the hearsay reports of others. Morva fails to establish that more comprehensive cross-examination would have resulted in Officer Roe changing his unequivocal, uncontradicted testimony. Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

## CLAIM (IV)

In claim (IV), Morva argues he was denied the effective assistance of counsel because counsel failed to adequately investigate and develop evidence relating to the conditions at Montgomery County Jail. Morva contends that conditions at the jail included extreme overcrowding, non-existent medical care, an ever-present threat of violent attack, and lack of privacy when going to the bathroom. Morva contends that this evidence would have helped jurors understand how Morva's "horrendous experience at the jail influenced his actions." Morva further contends that failure to provide this information "undermines confidence in [the] jurors' decision at the trial's guilt and penalty phases."

12

The Court holds that claim (IV) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including Morva's exhibits, demonstrates that Morva was not exposed to any unique conditions of confinement and Morva was not denied medical treatment. Morva's conditions of confinement would not have provided a viable defense to the murders he committed, and would not have mitigated the murders. Counsel is not ineffective for failing to raise frivolous arguments. Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

## CLAIM (V)

In claim (V), Morva alleges he was denied the effective assistance of counsel because counsel failed to present evidence and argument of Morva's belief that "the specific combination of his longstanding and significant medical problems and lack of immediate treatment options while incarcerated presented an imminent, life-threatening situation, and that he would die soon if he remained in the jail." Morva contends that his escape from the jail and subsequent killing of the two victims to avoid being

13

returned to the jail "were motivated by his belief that his actions were acts of self-defense and necessary responses to the immediate threat posed by his particular experience of the circumstances at the jail." Thus, according to Morva, even if the jury found his "fear to be unreasonable, the evidence was sufficient to present argument and instruction . . . with regard to a potential lesser-included offense and in mitigation of the death sentence."

The Court holds that claim (V) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. There is no support in law for the proposition that one attempting to escape legal incarceration because of what he perceives as a threat of harm is thereby privileged to kill any individual, no matter how innocent or lacking in culpability, who presents a bar to that escape. Moreover, the record, including the trial transcript and Morva's exhibits, demonstrates no person could reasonably have apprehended imminent death or serious bodily harm from McFarland or Sutphin.

Morva's alleged fear that his return to Montgomery County Jail might result in his death within a few months from some unnamed danger did not create a valid claim of self-defense, nor was it reasonably probable that the jury would have perceived his alleged fear as mitigating

14

evidence for his murder of two innocent people.  Also, the record does not support Morva's allegation that he was persistently denied necessary medical attention.  In fact, he had been taken to the hospital for medical treatment at the time he attacked two of the victims and escaped. Counsel is not ineffective for failing to pursue a frivolous position or argument.  Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

## CLAIM (VI)(A)

In claim (VI)(A), Morva asserts he received multiple punishments in violation of the double jeopardy clause. Morva contends his case is indistinguishable from Clagett v. Commonwealth, 252 Va. 79, 472 S.E.2d 263 (1996), in that Morva's capital conviction and death sentence for killing both McFarland and Sutphin within three years was derivative of the underlying capital murders of McFarland and Sutphin.  Morva contends "the legislature must be deemed to have authorized a defendant's conviction and death sentence for multiple-homicide offenses only when he is not also convicted and sentenced to death for the predicate murders."

15

The Court holds that claim (VI)(A) is barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton, 215 Va. at 29, 205 S.E.2d at 682.

CLAIM (VI)(B)

In claim (VI)(B), Morva asserts he was denied the effective assistance of counsel because counsel failed to object to, and thus failed to protect Morva from, multiple convictions and multiple punishments in violation of the double jeopardy clause. Morva contends that had counsel objected, the third death sentence would not have been imposed or would have been vacated.

The Court holds that claim (VI)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. In Payne v. Commonwealth, 257 Va. 216, 227-29, 509 S.E.2d 293, 300-01 (1999), this Court addressed whether a defendant could be subjected to multiple punishments where the convictions are for the violation of distinct statutory provisions for which separate statutory punishments are authorized. The Court held that such punishments do not violate double jeopardy. Id.

16

Morva was sentenced to death for three separate capital offenses: capital murder while in custody, Code § 18.2-31(3), capital murder of a law-enforcement officer, Code § 18.2-31(6), and capital murder of more than one person within a three-year period, Code § 18.2-31(8). The elements of capital murder while in custody are: (1) the willful, deliberate, and premeditated killing; (2) of another; (3) by a prisoner of a state or local correctional facility, or while in the custody of an employee of such facility. The elements of capital murder of a law-enforcement officer are: (1) the willful, deliberate, and premeditated killing; (2) of a law-enforcement officer; (3) for the purpose of interfering with the performance of his official duties. The elements of capital murder of more than one person within a three-year period are: (1) the willful, deliberate, and premeditated killing; (2) of more than one person; (3) within a three-year period. The elements of each of these capital offenses are different and each carries its own separate penalty.

There was no double jeopardy violation under the circumstances of this case, and counsel is not ineffective for failing to raise a frivolous argument. Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that,

17

but for counsel's alleged errors, the result of the proceeding would have been different.

CLAIM (VII)

In claim (VII), Morva contends he was denied the effective assistance of counsel because counsel unreasonably failed to investigate and present powerful mitigation evidence that Morva had saved a man's life and helped the Commonwealth prosecute the man's assailant. Morva alleges that he once put his own life at risk to help the victim of an assault, Kevin Grizzard, and that Morva's later testimony against one of the assailants led to that person's conviction. Morva also alleges that, as a result of his own actions, he suffered bullying and harassment, including while he was confined in the Montgomery County Jail. Morva contends that both he and Grizzard would have testified to the events in question, if they were called at an evidentiary hearing, and that there is a reasonable probability that the omitted testimony would have provided jurors with a better understanding of Morva's background and character, and would have moved at least one juror to select life without parole as the appropriate sentence.

The Court holds that claim (VII) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. Morva fails to proffer an

18

affidavit from Grizzard to verify that he would have testified as Morva contends, and the affidavits Morva has provided contain hearsay statements concerning the attack and Morva's involvement. Furthermore, the information provided by Morva establishes that Grizzard had been recruited by Morva to participate in a number of burglaries in 2005, and that Morva had become increasingly anti-social leading up to the murders, had expressed his disdain for law-enforcement, and felt justified in his criminal behavior. Counsel is not ineffective for failing to present evidence that has the potential of being "double-edged." Lewis v. Warden, 274 Va. 93, 116, 645 S.E.2d 492, 505 (2007). Such tactical decisions are an area of trial strategy left to the discretion of counsel and should not be second-guessed in habeas corpus. See Strickland, 466 U.S. at 689-90. Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

CLAIM (VIII)

In claim (VIII), Morva asserts he was denied the effective assistance of counsel because counsel failed to conduct an adequate investigation into Morva's childhood

19

and family background, and failed to meaningfully present the limited evidence they uncovered about Morva's home life. Morva contends counsel "cut short" the investigation into Morva's family, which Morva contends would otherwise have revealed "influential genetic and environmental factors at play." Morva contends counsel should have pursued information regarding Morva's father's ties to Hungary because Morva's father fled Hungary during the revolution and was a Catholic of Jewish heritage who had suffered through the Holocaust. Morva argues this information was necessary for jurors to accurately understand Morva's background.

The Court holds that claim (VIII) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including Morva's exhibits, demonstrates that counsel conducted an exhaustive investigation and spoke with the witnesses upon whose affidavits Morva now relies. These affidavits contain vast amounts of negative information that shows Morva as self-absorbed, manipulative, aggressive, and uncaring. As such, testimony from these witnesses would have been "double-edged." Lewis, 274 Va. at 116, 645 S.E.2d at 505. Furthermore, Morva has not demonstrated what impact, if any, his parents' upbringings had on his

20

actions.  The information about his parents that Morva now provides does not concern Morva's personal background or history, or the circumstances of the offense, and does not mitigate Morva's actions.  Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

CLAIM (IX)(A)

In claim (IX)(A), Morva asserts he did not receive constitutionally guaranteed assistance of experts in the preparation of his defense because the experts who evaluated Morva did not serve as advocates for him, but instead improperly maintained objectivity.  In order to fulfill the constitutional guarantee of expert assistance, Morva asserts that the experts should have identified, developed and presented evidence to cast Morva's history, character, background, and mental condition in the light most favorable to him.

The Court holds claim (IX)(A) is barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus.  Slayton, 215 Va. at 29, 205 S.E.2d at 682.

CLAIM (IX)(B)

In claim (IX)(B), Morva contends he was denied the effective assistance of counsel because counsel failed to object after being put on notice that the appointed experts would not act in Morva's best interest or advocate on his behalf. As a result, the experts did not fulfill their roles as advocates and Morva was denied his constitutional right to expert assistance.

The Court holds that claim (IX)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Morva proffers no authority for his contention that the experts appointed to assist Morva should be biased in Morva's favor. Morva was entitled to, and received, "access to [] competent" mental health experts to "conduct an appropriate examination and assist in evaluation, preparation, and presentation of" Morva's defense, as required by Ake v. Oklahoma, 470 U.S. 68, 84 (1985). Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

CLAIM (X)

In claim (X), Morva asserts he was denied the effective assistance of counsel because counsel failed to conduct an adequate enough investigation to enable the mental health experts to make an informed and accurate diagnosis. Morva contends counsel should have obtained information from Morva's family and friends about the symptoms of his descent into mental illness. He also claims that counsel should have obtained medical records from Morva's immediate family, and that without such information, mental health experts under-diagnosed the severity of Morva's mental illness.

The Court holds that claim (X) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Morva proffers no competent evidence to substantiate his claim that he suffered from a "true mental illness," or that providing additional information to the mental health experts who examined Morva in preparation for trial and sentencing would have changed the experts' conclusions. Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

23

CLAIM (XI)

In a portion of claim (XI), Morva asserts he was denied the effective assistance of counsel because counsel failed to provide appointed mental health experts with even the minimal information counsel had obtained that would have enabled the experts to make an informed and accurate diagnosis. Morva contends counsel should have given the mental health experts the names of several individuals with whom Morva spent time in the years before the murders. He contends that had counsel done so, the experts would have interviewed these individuals and would likely have determined Morva suffered from a "true mental illness" such as delusional or schizophrenic disorder.

The Court holds that this portion of claim (XI) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Morva proffers no competent evidence to substantiate his claim that he suffered from a "true mental illness," or that providing additional information to the mental health experts who examined Morva in preparation for trial and sentencing would have changed the experts' conclusions. Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable

probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (XI), Morva asserts he was denied the effective assistance of counsel because counsel failed to reconcile the expert testimony with that of lay witnesses. Morva contends these conflicts led the jury to conclude that all of Morva's penalty phase evidence was unreliable.

The Court holds that this portion of claim (XI) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Morva fails to state how counsel could possibly have reconciled the testimony of all the various witnesses, who had each known and spent time with Morva at different periods of his life, and who each had different experiences with and perceptions of him. Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

## CLAIM (XII)

In claim (XII), Morva asserts he was denied the effective assistance of counsel because counsel failed to object to damaging evidence that lacked a proper

25

evidentiary foundation and was therefore irrelevant to the jurors' sentencing decisions. Specifically, Morva contends counsel should have objected when the Commonwealth elicited testimony from Morva's mental health experts regarding narcissism and predatory aggression because neither expert found a basis for diagnosing Morva as having narcissistic personality disorder or predatory aggression.

The Court holds that claim (XII) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Morva's experts found that Morva "met diagnostic criteria for narcissistic personality disorder" or had "narcissistic personality features." Thus, there was sufficient foundation for the Commonwealth to question Morva's experts regarding narcissistic traits. Moreover, the Commonwealth presented evidence that showed Morva's actions were aggressive, premeditated, and goal oriented and that Morva did not regret his actions, thus establishing a foundation for the questions regarding predatory aggression. Counsel was not ineffective for failing to raise a frivolous argument by objecting to such evidence. Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged

26

errors, the result of the proceeding would have been different.

CLAIM (XIII)

In claim (XIII), Morva contends he was denied the effective assistance of counsel because counsel failed to impeach Gregory Nelson by causing him to admit part of his in-court testimony was inconsistent with interview statements he made to police officers. Nelson testified during the penalty phase of the trial that he and Morva participated in various crimes and that Morva had threatened Nelson and others.

Counsel attempted to impeach Nelson by showing that in his interviews with police, Nelson did not say that Morva had threatened him. When Nelson denied this, counsel attempted to use the interview statements to refresh Nelson's recollection, but the Commonwealth's objection was sustained because Nelson had not signed the statements. Morva contends that although counsel reserved the right to recall the police officers and Nelson, counsel failed to do so as a result of inadvertence instead of strategy. Morva contends impeaching Nelson through the police officer's testimony would have minimized the effect of evidence regarding Morva's future dangerousness.

27

The Court holds that claim (XIII) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Morva does not provide the police report, or affidavits from the police officers or from Nelson to demonstrate the testimony they would have provided had counsel recalled them. In addition, Morva proffers no evidence to support his claim that counsel's "failure was the result of inadvertence." Thus, Morva has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Upon consideration whereof, Morva's motions for leave to supplement the record, to amend the petition for a writ of habeas corpus, for discovery and production of documents, for appointment of experts, and for an evidentiary hearing are denied. Morva's motion for en banc consideration is denied as moot.

Upon consideration of the respondent's motion to strike portions of Morva's appendix and Morva's reply, the motion to strike is denied. The exhibits contained in the appendices are considered pursuant to the appropriate evidentiary rules.

Accordingly, the petition is dismissed and the respondent shall recover from Morva the costs expended in his defense herein.

This order shall be published in the Virginia Reports.

Respondent's costs:

Attorney's fee          $50.00

A Copy,

Teste:

Patricia L. Harrington, Clerk