COURT OF APPEALS OF VIRGINIA

Present:    Judges Benton, Kelsey and McClanahan
Argued at Richmond, Virginia


LOUIS K. HARRIS

                                                          MEMORANDUM OPINION[*] BY
v.        Record No. 2153-03-2               JUDGE JAMES W. BENTON, JR.
                                                                FEBRUARY 22, 2005
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                         William R. Shelton, Judge Designate

            Craig W. Stallard, Assistant Public Defender (Office of the Public
            Defender, on brief), for appellant.

            Virginia B. Theisen, Assistant Attorney General (Jerry W. Kilgore,
            Attorney General, on brief), for appellee.


        The trial judge convicted Louis K. Harris of first-degree murder for fatally stabbing

Evelyn Lewis, his grandmother.  Harris contends the trial judge erred in admitting (i) a writing in

which his grandmother recorded that Harris threatened to kill her four months earlier and (ii) the

testimony of a witness about a conversation in which Harris's grandmother said that Harris had

threatened to kill her and that she was afraid of Harris after he made these threats.  For the

reasons that follow, we hold that the arguments on appeal are barred by Rule 5A:18, and we

affirm the trial judge's rulings.

                                                    I.

        The evidence at trial proved that on December 28, 2002, Mary Smith arrived in

Richmond to visit Harris's grandmother, who was her mother, and found her dead on the pantry

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

floor. As she was inventorying Harris's grandmother's belongings, Smith found a notebook with seven pages of her writings and gave it to a detective.

The detective testified he arrested Harris and read him <u>Miranda</u> rights. Harris signed a waiver and talked to the detective, describing an altercation with his grandmother. Harris said he arrived home in the evening and had an argument with his grandmother. When the argument became heated, she threw boiling water on him. Harris displayed to the detective scars he said resulted from the boiling water, and he told the detective he went into a rage and stabbed his grandmother. After giving this explanation, Harris wrote the following at the detective's request:

> I, Louis Harris, do confess the sin of murder of Evelyn Lewis. I did love my Grand very much. It was an accident. After the hot water hit me, I became enraged, and I'm sorry to all of my family. I'm going to miss her. . . . I did stab my Granny.

After the detective identified the notebook he had received from Smith, the prosecutor asked the trial judge to admit the notebook into evidence. The prosecutor directed the judge to a passage that read as follows:

> But since he start bringing his woman here dought asking me he been acking straing on August 19/02  He told me he was going to kill me . . . .

The prosecutor said the writing "indicat[ed] a prior threat to kill the woman, not an accident, but a prior threat had been recorded in her diary." Harris's attorney objected on hearsay and relevance grounds, arguing that Harris's grandmother's state of mind is relevant only insofar as it was expressed to Harris. The trial judge overruled Harris's objections and admitted the notebook.

The prosecutor also introduced the testimony of Agnes Lipscomb. Over Harris's objection on the grounds of hearsay and relevance, Lipscomb testified that in the same month as the homicide she had the following conversation with Harris's grandmother, who was also her mother:

[Harris's grandmother] told me that he came in one day with a weapon and he stated that he was going to kill her with it. And she took it and hid it. And he didn't know where she had hid it. But she also told me . . . me that he started cursing her out, and she said I never heard such cursed words in my life.

I said, well, why don't you put him out? She said, because I'm afraid of him. She said, because he said, if I put him out, he is going to set this house, this mother fucking house on fire and burn me up in it. Them was his words. The words she told me he said.

Lipscomb also testified that Harris's grandmother "was afraid . . . if she go to the police they wouldn't help her, and that would make him kill her faster."

Harris testified he had been living with his eighty-seven-year-old grandmother for eight years. According to Harris, he left home on the morning of December 27, 2002 and drank malt liquor all day. After consuming fifteen quarts of malt liquor, he returned home after 10:00 p.m. As Harris was preparing to make a sandwich, his grandmother told him his daughter had called. When Harris asked whether his daughter had left a message, his grandmother began to "fuss around" and made derogatory comments about his mother. They began to argue. Harris testified that he "thought the argument was over" and went to the bathroom. When he returned to the kitchen, his grandmother threw a pot of boiling water onto his back and arm. Harris testified that they began to argue again and that his grandmother lunged at him with a knife and cut his shirt. Harris testified he hit her in the forehead and she again attacked him with the knife. According to Harris, they wrestled as he attempted to get the knife. During the struggle, the knife "hits her somewhere and she falls." He testified he did not know where the knife entered and he had not intended to harm her. After she fell to the floor, he cut the telephone lines and ran from the house.

Harris testified that he and his grandmother argued often. However, he denied previously threatening to kill her. While testifying, he identified photographs taken after his arrest, showing the burn injuries.

At the conclusion of the evidence, the trial judge convicted Harris of first-degree murder.

II.

Harris challenges the admissibility of the notebook and of Lipscomb's testimony. He contends the "trial judge erred in admitting hearsay evidence without an appropriate exception to the rule against hearsay."

Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted therein. Stevenson v. Commonwealth, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977). Hearsay is inadmissible unless it falls within a recognized exception to the hearsay rule. Robinson v. Commonwealth, 258 Va. 3, 6, 516 S.E.2d 475, 476 (1999). "[T]he party attempting to introduce a hearsay statement has the burden of showing the statement falls within one of the exceptions." Id. at 6, 516 S.E.2d at 476-77.

Relying on Clay v. Commonwealth, 262 Va. 253, 257, 546 S.E.2d 728, 730 (2001), the prosecutor argued at trial that the writing and Lipscomb's testimony were admissible as an exception to the hearsay rule to prove Harris's grandmother's state of mind. He also argued the evidence was relevant to prove the killing was "not an accident."

When the writing was offered by the prosecutor, Harris's attorney objected as follows:

> We would have two objections, to hearsay and relevance.
>
> I understand the Commonwealth's position is they are introducing it to show state of mind, but in this situation, Judge -- And I know there is also case law that has been presented to the Court regarding the state of mind exception to the hearsay rule.
>
> It also has to be relevant. And understandably that would come in in a situation where the accused is claiming self-defense or accident, but it also has to be relevant that the state of mind was conveyed or communicated to the accused.
>
> In this case there has been no evidence whatsoever presented to the Court that any alleged threats, or any statements, or any feelings of alleged fear by the deceased was ever communicated to my client.

> We would object based on, again, hearsay and also relevance because her state of mind would not be relevant unless it has been communicated to my client.

This argument states two objections, "hearsay and relevance," and asserts as the basis for the relevance objection that Harris's grandmother's "state of mind would not be relevant unless it has been communicated to [Harris]." Except to note that the prosecutor had given the judge a copy of a decision about the state of mind exception to the hearsay rule, Harris's attorney made no argument addressing hearsay.

Similarly, Harris's attorney objected to Lipscomb's testimony as follows:

> Your Honor, we would renew our objection based on hearsay and relevance, and that there is no evidence that this alleged statement or information regarding state of mind was ever related to my client.
>
> I would cite the case of Hansen v. Commonwealth, which is 14 Va App 173, 1992 case. It states that it is not relevant unless it has been communicated to accused. There is no evidence that any of these statements by this accused were communicated to my client, and we would renew our objection on that.

The Commonwealth contends that Harris's arguments on appeal concerning the evidentiary issues are different than the arguments that Harris made at trial in support of the objection. We agree.

On appeal, Harris accepts the proposition that "[g]enerally, statements made by a crime victim that show the victim's state of mind are admissible as an exception to the hearsay rule, provided the statements are relevant and probative of some material issue in the case." Harris then argues as follows:

> There seems to be substantial agreement, however, that a victim's statements regarding fear of the accused are admissible to rebut claims by the defense of self-defense, suicide, or accidental death.
>
> However, in the case at bar, Harris argued that the death was manslaughter and not an accident or self-defense so the statements referring to the victim's state of mind were not relevant. Furthermore, the statements from the diary, assuming they were

- 5 -

> written when dated, pre-date the episode by at least four months, and were therefore irrelevant.

(Citations and footnote omitted).

This argument asserts (i) that the grandmother's state of mind is irrelevant where the defense is manslaughter and (ii) that the writing is irrelevant because it is remote from the event. It bears no resemblance to the argument advanced at trial to support the objection that the writing was irrelevant. There, Harris argued the evidence was not relevant because his grandmother had not communicated her fear to him.

Rule 5A:18 provides that "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Applying Rule 5A:18, we have held that "this Court 'will not consider an argument on appeal [that] was not presented to the trial court.'" Farnsworth v. Commonwealth, 43 Va. App. 490, 500, 599 S.E.2d 482, 487 (2004) (citation omitted).

> The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals. In addition, a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding.

Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991) (citation omitted). Accord Andrews v. Commonwealth, 37 Va. App. 479, 493, 559 S.E.2d 401, 408 (2002) (holding that the purpose of Rule 5A:18 "is to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals"). These rules are "'in accord with the general principle that to preserve error in a ruling on evidence a party must notify the trial court of his position and the specific

rule of evidence on which [the party] relies.'" Neal v. Commonwealth, 15 Va. App. 416, 422, 425 S.E.2d 521, 525 (1992) (citation omitted).

We further note that although Harris presents as the question to be decided "whether the trial court erred in admitting hearsay evidence without an appropriate exception to the hearsay rule," Harris confines his argument on brief to the *relevance* of the writing and of Lipscomb's recounting of the grandmother's statement. Harris makes no argument that his statements are not evidence of his grandmother's state of mind and that, therefore, the state of mind exception to the hearsay rule does not permit the introduction of Harris's own statements through the writing or Lipscomb's testimony. See, e.g., Clay, 262 Va. at 257-58, 546 S.E.2d at 730 (holding that a crime victim's "statements regarding fear of the accused are admissible" under the state of mind exception "provided the statements are relevant and probative of some material issue in the case"). Thus, we do not address whether statements by an accused constitute a crime victim's statements regarding fear of the accused.

Finally, we note that Harris also argues for the first time on appeal that the Commonwealth failed to establish the identity of the person referred to in the writing as "he." Rule 5A:18 bars our consideration of the issue for the first time on appeal. Moreover, we further note that a page in the notebook clearly refers to "Keith" and leaves no doubt from the context that the "he" is Harris. Thus, the exception to Rule 5A:18 is not implicated.

In summary, we hold that the arguments Harris raises on appeal in support of his contention that "the trial court erred in admitting hearsay evidence without an appropriate exception to the rule against hearsay" are not the same arguments advanced at trial. Therefore, we do not address whether the rule announced in Clay, "that a victim's statements regarding fear of the accused are admissible to rebut claims by the defense of self-defense, suicide, or accidental death," 262 Va. at 257, 546 S.E.2d at 730, applies to a case in which the defense of

manslaughter is raised.  Rule 5A:18 bars our consideration of those issues on this appeal.  For these reasons, we affirm the judgment.

Affirmed.