COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Lorish and Senior Judge Humphreys

BENJAMIN HOWARD ASHBY

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN
MARCH 17, 2026

v.      Record No. 1179-25-3

WYTHE COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF WYTHE COUNTY
Josiah T. Showalter, Jr., Judge

(William R. Kilgore; Kilgore Law, PLLC, on brief), for appellant.
Appellant submitting on brief.

(Katie M. DeCoster; Angi N. Simpkins, Guardian ad litem for the
minor child; Sands Anderson, PC; Barbour & Simpkins, LLP, on
brief), for appellee. Appellee submitting on brief.

The circuit court found that Benjamin Howard Ashby (appellant) abused or neglected two

children, M.A. and B.A.[1] As a result, the court entered child protective orders and transferred

custody to Melissa Newberry, the children's maternal grandmother. Seeking reversal, appellant

contends that evidence showing M.A. was behaving in a sexualized manner was inadmissible

hearsay. For the following reasons, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] We use initials, instead of names, to protect the privacy of minors. *Williams v. Panter*,
83 Va. App. 520, 528 n.1 (2025).
    Additionally, paternity testing revealed that appellant is not the biological father of B.A.,
and appellant subsequently withdrew his petition for custody of B.A.

"Under familiar principles, we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department [of Social Services]." *Jenkins v. Winchester Dep't of Soc. Servs.*, 12 Va. App. 1178, 1180 (1991). After a juvenile and domestic relations district (JDR) court found that four-year-old M.A. and six-month-old B.A. were abused or neglected by appellant and their mother, the court entered dispositional and child protective orders. Appellant appealed all orders to the circuit court, which held a trial de novo in June 2025.

During that trial, Family Service Specialist Holly Owens testified that the local Department of Social Services (DSS) first received a referral concerning the children in June 2024, when M.A. and B.A. were living with appellant and his girlfriend, Kirsten Davis. Davis had a history of substance abuse, and her contact with her own children was supervised by DSS. As part of the investigation, Owens conducted a urine screen of appellant, who tested positive for alcohol.

At the time, the children often stayed with Angela Ashby (Angela), appellant's mother. Owens conducted a home visit with Angela in July 2024 and observed unsafe conditions including loose steps, trash bags "strewn about," clutter that made it difficult to move through the house, and clothing in the sink. Further, Angela tested positive for methamphetamines and other controlled substances. Appellant reached an agreement with DSS that Angela would only have supervised contact with the children. Owens also instructed appellant and Davis that "until [Davis] could provide a clean drug screen[,] she was not allowed in the home." Davis never provided a drug screen.

---

[2] The record in this case is sealed. "To the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts . . . ." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017). The rest remains sealed. *Id.*

Owens attempted a home visit with appellant in September 2024, but nobody answered the door. She did, however, observe "women's undergarments in a laundry basket on the porch," even though Davis had not produced a clean drug screen. That same day, Owens conducted a second home visit with Angela, who was unsupervised at her residence with the children. The home's conditions had deteriorated: a step had collapsed, trash was on the floors, clutter only left a narrow path to move, and dirty food containers were "out in the kitchen with gnats." Owens noted that B.A. had been sleeping in a littered bedroom and "only had a twin mattress on the floor," and no crib, which she considered unsafe for the then-four-month-old baby.

As a result, the children stayed with their mother under the supervision of Newberry until a September 2024 custody hearing. Following that hearing, the JDR court granted temporary joint legal custody to their mother, appellant, and Newberry, and joint physical custody to appellant and Newberry. The order specified that the children would be with appellant on the weekends, could have no contact with Davis, and could not go to Angela's home. The court also ordered all involved parties to refrain from using illegal substances and alcohol during and 48 hours before their contact with the children.

In October 2024, DSS received another referral, alleging that appellant and Davis were having sex while M.A. was sitting next to them and B.A. was nearby in his walker. As Owens testified in circuit court, the referral reported that M.A. "had been observed making sexual sounds" and sexual movements. Appellant objected to this testimony on hearsay grounds. The court overruled the objection, stating that "it would not consider the allegations made to [DSS] for their truth."

Following the referral, Owens interviewed appellant, Davis, M.A., Newberry, and the children's maternal aunt, Miranda Newberry (the aunt). Owens testified that, while interviewing M.A., "she observed [M.A.] . . . engage in sexualized behavior, including moaning sounds,

licking her lips[,] and getting on the floor on her hands and knees and moving her bottom." Owens also testified that she "had not at any point during the interview asked [M.A.] to mimic any reported sexualized behavior." Appellant objected to Owens's testimony as hearsay because it described M.A.'s "nonverbal conduct intended as an assertion." The court overruled the objection, stating that witnesses could testify to what they observed.

Owens gave more details about her interview with M.A. in an affidavit[3] she submitted to the JDR court in support of the protective orders. In that affidavit, Owens explained that M.A. told her that "her daddy and KK[4] like to play together . . . in the bedroom." When asked how they "played" together, M.A. made the above-mentioned sounds and movements.

During Owens's investigation, appellant again tested positive for alcohol. As a result, the JDR court entered preliminary child protective orders in October 2024, requiring appellant's contact with the children to be supervised by DSS. Appellant did not participate in any visitation until April 2025.

At trial in the circuit court, the aunt testified that, since September 2024, she regularly helped Newberry take care of the children. She explained that she had observed "sexual behavior from [M.A.] in the form of moaning sounds, licking her lips[,] and spreading her legs." The aunt further testified that "on another occasion after a bath, she observed [M.A.] get on all fours, turn around with legs spread[,] and wiggle her behind." Again, appellant objected on hearsay grounds, arguing the conduct was intended as an assertion. The court overruled appellant's hearsay objections to these statements.

---

[3] As stated in the adjudicatory order entered by the circuit court, the court considered the petitions and affidavits submitted in this case in its determinations underlying the order.

[4] The record reflects that M.A. called Davis "KK" or "Momma KK."

According to the aunt, M.A.'s sexualized behavior was always "worse after returning from [appellant]'s care" and M.A. would "exhibit these behaviors multiple times each day for about two days after returning from his care." Similarly, M.A. also behaved aggressively following visits with appellant, like "hitting the other children in the home." After appellant discontinued contact with M.A., she "stopped exhibiting these behaviors."

Newberry, whose custody of the children dated back to September 2024, testified that she had observed M.A. engage in the same sexualized behavior. She further testified that she was willing and qualified to care for the children and had already built a positive relationship with them.

Finally, Larry Cline, the pastor at a local church, stated that he did not recall who attended his church in October 2024, although he did remember that he previously testified that Angela and Davis attended the church together with the children in October 2024, while Davis was prohibited from having contact with the children.

Appellant denied all allegations but could offer no explanation for M.A.'s behavior.

At the conclusion of trial, the court found that the children were abused or neglected and entered new adjudicatory, dispositional, and child protective orders with the same terms as the JDR court orders, remanding the case to the JDR court for further proceedings.

ANALYSIS

I. Standard of Review

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991) (quoting *Farley v. Farley*, 9 Va. App. 326, 328 (1990)). "[A]n abuse and neglect proceeding which may lead to temporary placement of the child," requires only a "preponderance of the evidence standard." *Wright v. Arlington Cnty.*

*Dep't of Soc. Servs.*, 9 Va. App. 411, 414 (1990). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)). "Additionally, 'the admissibility of evidence "is within the broad discretion of the trial court, and an [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of discretion."'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (alteration in original) (quoting *Surles v. Mayer*, 48 Va. App. 146, 177 (2006)).

## II. Assignment of Error

Appellant argues that all references to M.A.'s sexualized behavior were inadmissible hearsay because, in each instance, the behavior was intended as an assertion.

DSS responds that the statements were not offered for the truth of the matter asserted and were not nonverbal assertions. DSS also contends that the other evidence was sufficient to support the abuse or neglect finding.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence for the truth of the matter asserted." Va. R. Evid. 2:801(c). "[H]earsay evidence is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule, and . . . the party attempting to introduce a hearsay statement has the burden of showing the statement falls within one of the exceptions." *Campos v. Commonwealth*, 67 Va. App. 690, 705 (2017) (alterations in original) (quoting *Godoy v. Commonwealth*, 62 Va. App. 113, 119 (2013)). "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended as an assertion." Va. R. Evid. 2:801(a).

- 6 -

"Nonverbal conduct of a person intended by him as an assertion and offered in evidence to prove the truth of the matter asserted falls within the ban on hearsay evidence." *Stevenson v. Commonwealth*, 218 Va. 462, 465 (1977). "[C]ommunicative behavior, such as shaking the head or pointing a finger, will satisfy th[e] definition [of a nonverbal assertion], whereas walking down the sidewalk and going into a store will not." *Bennett v. Commonwealth*, 69 Va. App. 475, 487 (2018) (quoting Charles E. Friend & Kent Sinclair, *The Law of Evidence in Virginia* §§ 15-1[a], 15-7, at 898, 942 (7th ed. 2012)).

In *Stevenson*, the Supreme Court found that when a murder suspect's wife handed a police officer a shirt after the officer requested the clothes worn by the suspect on the day of the murder, "the conduct of [the wife] was intended as a nonverbal assertion for the purpose of showing that the shirt not only belonged to [the suspect] but was in fact worn by him on the day of the crime." 218 Va. at 465. The officer's testimony about the shirt was therefore inadmissible hearsay. *Id.* at 466.

Here, appellant raised a hearsay objection in four instances: (1) Owens's testimony describing the October 2024 DSS referral; (2) Owens's testimony about M.A.'s behavior during her interview following that referral; (3) the aunt's testimony about behavior she observed while M.A. was in her care; and (4) Newberry's testimony about M.A.'s behavior.

Appellant argues that M.A.'s behavior during her interview with Owens was an assertion because it was "presumably made in response to some questions." Similarly, he posits that all other instances were assertions because the witnesses interpreted the behavior as "sexualized," meaning the "conduct was on each occasion intended as an assertion of a sexual nature." Finally, appellant argues that the court's error was not harmless because it relied on M.A.'s behavior in its determination of abuse or neglect.

The first contested statement—Owens's testimony about the October 2024 referral—was not hearsay.  Owens testified that appellant was referred to DSS because he had been observed having sex in front of the children.  The court specifically stated that "it would not consider the allegations made to [DSS] for their truth."  Because a statement is only hearsay if it is admitted for "the truth of the matter asserted" and this statement specifically was not considered for its truth, the court did not err in overruling appellant's hearsay objection.  Va. R. Evid. 2:801(c); *see also Hamm v. Commonwealth*, 16 Va. App. 150, 156 (1993) (explaining that "[i]f a statement is offered for any purpose other than to prove the truth or falsity of the contents of the statement . . . it is not objectionable as hearsay").

We also do not agree with appellant that Newberry's and the aunt's testimony was inadmissible hearsay.  Nothing in the record suggests that the behaviors described by Newberry and the aunt were assertions.  Newberry and the aunt both testified to different instances in which M.A. engaged in sexualized behavior.  On one occasion, the aunt observed M.A. "get on all fours" after a bath and "turn around with legs spread and wiggle her behind."  Similarly, Newberry observed M.A. "spreading her legs and showing her private parts."

No evidence suggests that these behaviors were assertions made in response to a question or prompting.  Nor is there any evidence of a statement or behavior by M.A. that could indicate that she intended the sexualized movement and noises to be an assertion.  Thus, we cannot say that the evidence was "communicative behavior" intended as an assertion, and the law is clear that witnesses can testify to what they observed.  *Bennett*, 69 Va. App. at 487.

That leaves Owens's testimony concerning M.A.'s behavior during the interview.  Appellant contends the behavior was an assertion because it was "presumably made in response to some questions."  Owens's affidavit submitted in support of the protective orders shows that M.A.'s behavior did occur in response to her questions.  When asked how appellant and Davis

- 8 -

played together, M.A. responded by making sexual sounds and movements. Over appellant's objection, Owens testified to this behavior during the circuit court trial. Because "the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available,'" *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)), we assume, without deciding, that Owens's testimony concerning M.A.'s behavior during the interview was inadmissible hearsay.

But that assumed error was harmless. "Code § 8.01-678 makes 'harmless-error review required in *all* cases.'" *White*, 293 Va. at 420 (quoting *Commonwealth v. Swann*, 290 Va. 194, 200 (2015)). "This Court may uphold a decision on the ground that any evidentiary error involved is harmless if it can conclude 'that the error did not influence the [fact finder] or had but slight effect.'" *Salahuddin v. Commonwealth*, 67 Va. App. 190, 212 (2017) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)). "An error is harmless . . . 'if the evidence admitted in error was merely cumulative of other, undisputed evidence.'" *McLean v. Commonwealth*, 32 Va. App. 200, 211 (2000) (quoting *Ferguson v. Commonwealth*, 16 Va. App. 9, 12 (1993)). "Cumulative testimony is repetitive testimony that restates what has been said already and adds nothing to it. It is testimony of the same kind and character as that already given." *Commonwealth v. Proffitt*, 292 Va. 626, 640-41 (2016) (quoting *Massey v. Commonwealth*, 230 Va. 436, 442 (1985)).

Here, Owens's testimony was of the same kind and character as testimony from Newberry and the aunt. The aunt and Newberry testified that they observed M.A. making "moaning sounds, licking her lips[,] . . . spreading her legs," and "get[ting] on all fours, turn[ing] around with legs spread and wiggl[ing] her behind." Owens testified to that exact behavior: "moaning sounds, licking her lips[,] and getting on the floor on her hands and knees and moving her bottom." Owens did not describe any behavior that was not also observed and testified to by

either the aunt or Newberry.  Thus, Owens's testimony was cumulative.  *Proffitt*, 292 Va. at 640-41.

Other evidence supported the court's finding of abuse or neglect.  Appellant allowed the children to have contact with Angela and Davis—both of whom have a history of illegal substance use—after the JDR court prohibited such contact.  The aunt testified that M.A.'s sexualized and aggressive behaviors were always worse after visitation with appellant and then tapered off over time.  Additionally, even after appellant agreed with DSS that Angela's contact with the children must be supervised, the children were left unsupervised with her, and Owens testified to the unsafe and unsanitary conditions in Angela's house.  Because Owens's challenged testimony was cumulative and other evidence supported the court's decision, any error was harmless.

CONCLUSION

For these reasons, we affirm the circuit court's judgment.

*Affirmed.*